WALTER PIERCE v. ANNIE E. HOLZER.

*Executors and administrators—Misapplication of trust funds—Purchase of homestead—Remedy of surety on official bond—Subrogation—Equity.*

1. An administratrix invested a portion of the trust fund in a house and lot, which she afterwards occupied as her homestead. On her settlement with the probate court, she was ordered to make distribution of the balance found in her hands in the *pro rata* payment of the debts due from the estate, which she failed to do, and a judgment was recovered against her and her sureties on her official bond by one of the creditors, on which an execution was issued and levied on the homestead, which was sold, and, by an arrangement with the surety, bid in by a third party, to whom he refunded the purchase price and took an assignment of the

sheriff's certificate, and at the expiration of the time allowed for redemption he received the usual sheriff's deed of the premises. He then brought ejectment, and was defeated on the ground that the premises were defendant's homestead; whereupon he filed a bill to set aside said deed and execution sale, and declare the amount paid by complainant a valid claim against the estate, to be satisfied, if necessary, by a sale of said homestead.

*Held*, that complainant was entitled to a decree subrogating him to the rights and remedies of the judgment creditor, as against defendant, and the estate in her hands, and declaring his claim a lien upon said homestead property, subject to all legal incumbrances placed thereon in good faith, and without notice of the trust character of the funds used in its purchase, prior to the filing of complainant's bill, and, in default of the payment of such claim, said premises to be sold as on the usual foreclosure sale.[1]

2. An administrator stands in the relation of a trustee to all those interested in the estate, and rights and remedies against him are not more restricted than in the case of any other trustee intrusted with the care, management, or disposition of property.

3. It is well settled that when property held upon any trust to keep, use, disburse, or invest in a particular manner, or to or for particular persons, is misapplied by the trustee, and converted into different property, or sold and the proceeds thus misapplied, the property can be followed wherever it can be traced through its transformations, and will be subject when found in its new form to the rights of the original owner or *cestui que trust*. *Cook v. Tullis*, 18 Wall. 341.

4. When an administrator misapplies the assets in his hands, to the injury of the creditors of the estate to whom distribution has been ordered, they may obtain permission and sue the bond, or pursue the fund, if they are able to trace and identify it, and no more than proof of substantial identity is required. *Neely v. Rood*, 54 Mich. 134. These remedies are concurrent, and the election of one does not preclude resort to the other.

5. The law subjects the assets of a deceased person to the payment of his debts, and for this reason the creditor has an equitable lien theron, which he can enforce through the administrator in a proper case for equitable interference. The misapplication of the assets to the injury of the creditors, and neglect to pay after an order of distribution, is such a case, and the creditor can follow the fund, if traceable in the changed form, in the hands of the trustee or purchaser with notice, and the surety who satisfies the

[1] As to general doctrine of subrogation, see *Bush v. Wadsworth*, 60 Mich. 255 (note).

debt is entitled to the securities against the principal debtor that
the creditor has for reimbursement.'

6. A trustee cannot escape making reparation, nor discharge prop-
erty from its trust character, by transforming it into a homestead,
which is not an asylum for fraud.

7. The fact that the complainant caused the property to be sold on
execution as the property of the defendant, and brought eject-
ment on the title thus obtained, does not constitute an estoppel as
between the parties, but discloses the inadequacy of such pro-
ceedings at law to afford relief.

Appeal from Kent. (Montgomery, J.) Argued Januarv
11, 1887. Decided April 14, 1887.

Bill by surety on administrator's bond to subject real estate
purchased with trust fund to payment of claims paid by
surety. Defendant appeals. Decree modified and affirmed.
The facts are stated in the opinion.

*E. S. Eggleston,* for complainant.

*J. W. Ransom,* for defendant.

CHAMPLIN, J. Complainant is surety upon the bond of
defendant, given to the judge of probate of Kent county, as
administratrix of the estate of Edward Welsh, deceased.

The inventory showed that she received as such adminis-
tratrix personal property valued at $9,309.02, and, in her
final accounting, she was charged by the judge of probate
with items additional amounting to $178.75, making a total
of $9,487.77.

In her final settlement with the judge of probate, she was
credited for uncollected accounts, loss on goods sold at
auction, errors in inventory, taxes, expenses of administra-
tion, allowances, debts paid, and various other items, amount-
ing to $8,732.06. The administratrix was the widow of the
deceased, and, in the amount credited to her, were the fol-
lowing items: Household furniture, $159.45; personal estate
assigned to her, $200; allowance as widow, one year, at $15

a week, $780; *per diem* as administratrix, one year, $306;. percentage on property collected and accounted for, $144.25.

After making all allowances, the judge of probate found that she had in her hands belonging to the estate, subject to distribution among the creditors, the sum of $755.71. He also found that the unpaid indebtedness amounted to $2,082.-75, and that she should pay to each creditor 36.28 per cent. of his claim; and thereupon, on the thirtieth day of December, 1876, made an order that the $755.71 should be distributed to the creditors within 60 days from that date.

The administratrix having neglected to make the distribution ordered, A. R. and W. F. Linn, as creditors entitled to a distributive share, applied to and obtained leave from the judge of probate; on the eighteenth of March, 1878, to sue her bond, which was done, and judgment recovered against the administratrix and the sureties in the bond on the fourteenth day of June, 1879, for $296.30 damages, and costs taxed at $28.

The defendant was appointed administratrix on the tenth of March, 1873. On or about the twenty-eighth day of August, 1873, she purchased of George W. Griggs lot No. 4,. block 6, Wenham's addition to the city of Grand Rapids, for $2,500, and paid $1,200 down, and gave back a mortgage to secure the payment of the balance of $1,300. She took the deed from Griggs in her individual name. The bill of complaint alleges, and the answer denies,—

"That she took of the money of the estate, realized by her as such administratrix from the sales of the property of said estate, the sum of $1,200, which ought to have been applied and used in the payment of the debts owing by the estate, and paid the same to George W. Griggs to apply upon the said purchase price of said lot."

She immediately after the purchase went into the possession of this property, and has ever since used and occupied it as her homestead.

She neglected to pay the judgment obtained against her

and her sureties, and, the other surety being pecuniarily irresponsible, the complainant made arrangements whereby the sheriff levied the execution issued upon the judgment upon the lot above described, and advertised and sold the same to satisfy such judgment. Complainant obtained Moses V. Aldrich to bid the property off, and hold it for complainant's benefit, which he did, and complainant refunded to him the money therefor, and obtained an assignment of the sheriff's certificate of sale, and, after the time of redemption expired, received from the sheriff a deed of the premises. Complainant then brought ejectment against defendant, and was defeated in the suit, upon the ground that the premises were defendant's homestead, and not liable to be sold upon the execution issued upon said judgment.

Another suit was authorized and brought upon the administration bond in behalf of other creditors, and a judgment was rendered thereon and execution issued, and complainant was obliged to pay the same, amounting to the sum of $582.-70; the total amount paid on account of both judgments being $936.92.

The bill alleges, and the defendant denies, that at the time defendant purchased the property of Griggs she had no money, property, or effects of her own with which to pay for the same, and wrongfully and fraudulently purchased said property with the money of the said estate, and that she invested the money of the said estate in the property with the intent to cheat complainant out of his just dues, and to keep and appropriate the money of the said estate, which in right and justice ought to be turned over to complainant to satisfy him for the money which by her fraudulent conduct and misappropriation of the funds of the estate he has been compelled to pay, to her own use and benefit, and gives out and claims that she will hold the same as a homestead against the rights and claims of complainant; that she has no right, title, or interest in the property, except such as she obtained

by the misappropriation of the money of the estate; and that it is unjust, inequitable, and fraudulent to withhold the said property from the satisfaction of the debts of said estate.

Counsel for complainant contends that the money in the hands of the administratrix was a trust fund for the payment of the debts of the estate, and that, wherever the property of a party has been wrongfully misapplied, or a trust fund has been wrongfully converted into another species of property, if its identity can be traced, it will be held in its new form liable to the rights of the original owner; and if an executor or administrator purchase property with money belonging to the estate, a trust in the property will result to the persons entitled to the beneficial interests in the estate. And the complainant asks to have this property sold to satisfy him for the amount he has been obliged to pay to the creditors of the estate of Edward Welsh; in other words, to be subrogated to the rights of the creditors against this property; that the complainant occupies the position of surety to defendant, and, by performing the contract of suretyship, the principal obligation is discharged against the debtor, and is kept alive between the creditor, the debtor, and the surety for the purpose of enforcing the last.

Issue is taken by defendant's counsel both upon the facts and the law as applicable to the facts disclosed by the record. It is proper that we should give our attention to the facts first. The disputed fact is whether the money paid for the lot in question was money in the hands of the administratrix belonging to the estate, and subject to the payment of the debts thereof. If the proof of this fact is not made out, it will not be necessary for us to consider the questions of law involved. Upon this point the evidence is embraced in a narrow compass. The bill alleges, and the answer admits, the making and filing of the final account, and the adjustment thereof by the probate judge, by which a balance was found to be in the administratrix's hands of $755.71, subject

to be distributed to the payment of the debts. No fault is found with this account, and no fraud, omission, error, or concealment is charged in the bill of complaint against it. The amount found by the judge to have been in her hands must stand as the true amount due from her to the estate. Her account does not show that she had withdrawn the $1,200 which she paid down from money which she received from the estate or which belonged to it. Her items of disbursements are all given, and it does not appear that any money was disbursed in payment of the lot purchased of Griggs.

Complainant testified in his own behalf, and he shows an intimate acquaintance with her financial circumstances. He says that, at the time of her husband's death, she had no money or property.

He testifies to a conversation which he had with defendant, after she was appointed administratrix, with reference to buying a house and lot; that he came into town one day, and she told him that she was going to buy a house and lot. He testified:

"I told her if she would take my advice, she wouldn't buy any property until she had settled with the creditors. I didn't think it right to buy any property until she had settled with the creditors. 'If you don't have money enough,' said I, 'to pay the creditors, they will take the house, and you might as well settle with them first. If you take my advice, you will not buy it.' At that, she put her hand down in her pocket and brought out some bills. I don't know the size, whether it was 100 or a 5 or 10. I asked her if that was the way she kept her money. She said, 'Yes.' I told her she was very foolish; she ought to put it in the bank; and that she had better go to Aldrich and get a bank-book. So that afternoon her and I went to look at the house.

"Q. Where was it?

"A. It was on Jefferson avenue,—I think above the Edmond house.

"Q. That is on Jefferson avenue?

"A. Yes, sir.

"Q. Was it on the same street?

"*A*. Yes, sir. They asked sixteen hundred dollars for it.

"*Q*. State if anything was said by her as to the amount of money she had.

"*A*. I told her she had better keep that money. She said she could pay two thousand dollars for the house. Said I: 'You take two thousand dollars out of the store,' said I, 'and you will miss it,' said I. 'You better not take two thousand dollars out.'

"*Q*. Anything said by her that she had money enough to pay the creditors and to pay the two thousand dollars?

"*A*. Yes, sir. She had money enought to buy the house and pay the creditors. I was objecting to her buying the house, or buying any property, until the creditors were paid.

"*Q*. State whether that is the property which she finally bought.

"*A*. No, sir. She went and bought on the other street.

"*Q*. On Division street?

"*A*. Yes, sir. She never told me about that until after she bought it."

On cross-examination he testified as follows:

"*Q*. I ask you if you did not advise her to buy it?

"*A*. No, sir. I told her I would like to see her buy the house if she had money enough to pay her creditors.

"*Q*. Didn't you at that time and in that conversation say to her, and advise her in the presence of Reeves, to buy this very place?

"*A*. No, sir. I never knew that she bought the place until she moved into it."

The foregoing is all the testimony given in the case tending to show that the money paid down on the purchase of the lot from Mr. Griggs was the money in her hands belonging to the estate. Does it prove it? Without doubt she obtained $1,200 from some source. She was allowed as widow by the probate court $15 a week. From March 11 to August 28 is 24 weeks. She was entitled upon this allowance for this time to $360. Under the statute she was also entitled to $200, which was assigned to her. Her *per diem* for 144 days would amount to $144. The family of the deceased was composed of the widow and three young children,—the eldest not exceeding five years of age,—and the weekly allowance was for the support of this family. It does not appear how

much, if any, she had saved out of her weekly allowance at the time she purchased the house. She introduced no proof whatever. The presumption is that the whole amount was necessary for the support and maintenance of the family. In the conversation detailed, the inference is clear that complainant understood that money belonging to the estate was to be used for the purpose of purchasing the house and lot, and he advised against it unless she had enough to pay the creditors; and he says that she asserted that she had money enough to buy the house and lot and pay the creditors. Surely this implies that she was using the money of the estate to make the purchase.

Upon final settlement it was found that there was a balance due from her to the estate of $755.71, which she was ordered to distribute to the creditors according to a certain per cent. in 60 days. She neglected to do so, but permitted her sureties to be sued, judgments recovered, and, without attempting to save them from loss on her account, stood by and saw them compelled to pay the judgments rendered by reason of her delinquency. Under such circumstances, justice demands that the inference should be drawn from the facts in evidence that the amount at least of $755.71 belonging to the estate, and held by her in trust for the payment of its creditors, was applied and paid towards the purchase of the house and lot in question at the time it was bought. Otherwise, if she had it on hand, it is presumed that she would have performed the duty enjoined upon her by the court, and distributed the fund to those entitled.

The circuit court found that she took from the money of the estate realized and obtained by her from the sales of the property of said estate the sum of $1,200, which ought to have been applied and used by her in the payment of the debts owing by the said estate, and paid the same to George W. Griggs upon the purchase of said lot. The balance found by the probate judge due the estate

available for the payment of debts is conclusive that this finding of the circuit court is erroneous as to the amount which should have been applied to the payment of the debts.

The counsel for defendant insists that, if it be found that the $1,200 paid towards the purchase price of the house and lot by defendant was trust moneys in her hands as administratrix of the estate of Edward Welsh, yet the complainant is not entitled to the relief prayed for because—

1. The house and lot is the homestead of defendant, recognized and treated ·by complainant as her individual property.

2. The complainant is not a creditor of the estate; that the case made by the bill shows simply a contract relation between complainant and defendant, and, as such, his remedies for enforcing contract obligations in this case are no broader and are of no different character than those provided in ordinary cases.

The second reason will be considered first; for, if complainant is not entitled to be subrogated to the rights of the creditors to whom he has paid the debt of defendant, it is an end of his case. The relation between complainant and defendant was not that of a surety to an ordinary debtor. He was the surety to a trustee. He undertook in behalf of defendant that she should faithfully execute her trusts as administratrix, and, among others, that she would faithfully collect the assets, and apply them to the payment of the debts of the deceased.

The administrator of an estate stands in the relation of a trustee to all those interested in the estate. Rights and remedies against him are not more restricted than in the case of any other trustee intrusted with the care, management, or disposition of property; and it is well settled that when property held upon any trust to keep, use, disburse, or invest in a particular way, or to or for particular persons, is misapplied by the trustee, and converted into different property, or is sold and the proceeds are thus misapplied, the property can be followed wherever it can be traced through

its transformations, and will be subject when found in its new form to the rights of the original owner or *cestui que trust.* *Cook v. Tullis,* 18 Wall. 341.

When an administrator misapplies the assets in his hands, to the injury of the creditors of the estate to whom distribution has been ordered, they have a choice of remedies. They may obtain permission and sue the bond, or they may pursue the fund, if they are able to trace and identify it; and no more than proof of substantial identity is required. *Neely v. Rood,* 54 Mich. 134. These remedies are concurrent, and the election of one does not preclude resort to the other. A suit upon the bond does not ratify the misapplication, and a pursuit of the fund does not preclude a suit upon the bond. It would be to the benefit of the sureties if the creditor should first proceed to recover and apply the fund misappropriated. But if he should proceed in the first instance, and enforce payment by the sureties, I can see no good reason why the sureties may not be subrogated to his rights and remedies to enforce payment out of the fund, to the same extent the creditor could have done.

The law subjects the assets of a deceased person to the payment of his debts, and for this reason the creditor has an equitable lien thereon, which he can enforce through the administrator in a proper case for equitable interference. The misapplication of the assets to the injury of the creditors, and neglect to pay after an order of distribution, is such a case. In such case the creditor can follow the fund, if he can trace it in its changed form, in the hands of the trustee or purchaser with notice, and, upon a familiar principle, the surety who satisfies the debt is entitled to the securities against the principal debtor that the creditor has for reimbursement.

The first reason above stated why the complainant is not entitled to relief is equally without merit. A trustee cannot escape-making reparation, nor discharge property from its

trust character, by transforming it into a homestead. A homestead is not an asylum for fraud; and trust moneys invested in it do not exempt the property from the established doctrine of being subject to the trust.

It is further insisted that the complainant, having treated the premises as the property of the defendant ever since she purchased them, and caused the same to be levied on and sold under the execution, and procured a deed from the sheriff, brought ejectment based upon such deed, is bound by the result of that judgment. I can see nothing in these facts that affects the equities of complainant's case. They do not constitute an estoppel as between these parties. They disclose an effort to obtain satisfaction at law of the obligation due to him as surety from defendant as principal, and the result merely shows that the law is inadequate to afford relief.

The complainant is entitled to a decree subrogating him to the rights and remedies of the creditors of the estate whose judgments he has paid, as against defendant, and the estate in her hands, declaring a lien on the premises described in the bill of complaint in his favor to the amount of $755.71, and interest thereon from the thirtieth day of December, 1876. The lien thus declared is subject to all legal incumbrances which, in good faith and without notice of the trust character of the funds invested by defendant, have been placed thereon by her prior to the filing of the bill of complaint.

The defendant must pay the amount of $755.71, and interest and costs awarded against her, in 60 days from the entry of the decree in this Court, and, in default thereof, the premises are to be sold in the same manner as sales of lands upon the foreclosure of mortgages; such sale to bar defendant, and those claiming under her since the filing of this bill, of all equity of redemption; the complainant to be permitted to bid at the sale. The ordering part of the decree

appealed from, modified as above indicated, will be affirmed. Neither party to recover costs in this Court. The record and decree will be remanded to the court below for execution.

The other Justices concurred.