# STONE ET AL. *v.* ELLIOTT.

[No. 21,964.    Filed November 18, 1914.]

1. HUSBAND AND WIFE.—*Wife's Interest in Realty of Deceased Husband.—Childless Second Wife.—Executor's Petition to Sell to Pay Debts.—Conclusiveness of Order.*—Where a decedent, who died in 1875, and whose personalty was insufficient to pay debts, left surviving him a childless second wife and children by his first wife, and the court, upon the petition of the executor to sell the realty to pay debts, in which the widow and children were made parties, and in which it was alleged that the widow owned but a life estate in one-third of said real estate, ordered a sale of the entire tract of land subject to a life estate in favor of the widow in one-third thereof, such order, never having been appealed from or contested, conclusively protected the title of the purchaser who claimed the fee to the entire tract, although, under a correct interpretation of the statute as it existed at the time, the widow was entitled to one-third in fee simple free from the claims of her husband's creditors, and which, upon her death, would have been inherited by the children of his former marriage. (*Armstrong* v. *Cavitt* [1881], 78 Ind. 476, as to the question of jurisdiction, overruled.)    pp. 456, 461, 463, 464, 465, 467, 476.

2. EXECUTORS AND ADMINISTRATORS.—*Character of Office of Executor.*—The executor of a will represents the estate and the creditors in a capacity in the nature of the trustee of an express trust. p. 460.

3. EXECUTORS AND ADMINISTRATORS.—*Debts of Estate.—Lands of Decedent.*—Where the personalty of a decedent is insufficient to pay the debts, such debts become a lien upon his lands, subject to the statutory rights of the widow.    p. 461.

4. DESCENT AND DISTRIBUTION.—*Inheritance.—Right of Inheritance.*—The right of inheritance is not a natural right and does not inhere in any one, but is a creature of the law and subject to the limitations to be found in the law.    p. 462.

5. HUSBAND AND WIFE.—*Conveyance by Wife of Lands Inherited from Husband.—Validity.*—Under §18 of the law of descents (1 G. & H. 284, §18; 1 R. S. 1852 p. 250) a deed purporting to convey lands derived by a widow in virtue of her previous marriage, executed during her subsequent marriage, was void. p. 463.

6. JUDGMENT. — *Default.* — *Admissions.* — By defaulting, a party admits the truth of the facts alleged against him.    p. 465.

7. COURTS.—*Erroneous Decisions.—Collateral Attack.*—The power to decide includes the power to decide wrong, and an erroneous

decision, at least upon a colorable question, resists collateral attack the same as one that is correct. p. 467.

8. COURTS. — *Jurisdiction.—Power to Determine.* — A court has power to determine the question of its jurisdiction and to conclude the parties to the record by its decision. p. 476.

From Howard Circuit Court; *Leroy B. Nash,* Judge.

Action by Jesse Elliott against George W. Stone and others. From a judgment for plaintiff, the defendants appeal. (Transferred from Appellate Court under §1405 Burns 1914, Acts 1901 p. 590.) *Reversed.*

*Blacklidge, Wolf & Barnes* and *W. O. Johnson,* for appellants.

*Bell & Kirkpatrick,* for appellee.

SPENCER, J.—Appellee brought this action to quiet title to an undivided one twenty-fourth interest in certain lands located in Howard county, and have partition of the same.

In a special finding the court found the material facts in the case to be, in substance, as follows: That Jacob Elliott died testate in Howard county in August, 1875, leaving a widow, Rachel Elliott, who was a second childless wife, and also seven children by his first wife of whom appellee was one; also certain grandchildren; that said Jacob Elliott died the owner in fee simple of the lands described in the pleadings; that on June 24, 1875, he duly executed his last will and testament in which he bequeathed to his wife, "in lieu of all her interest in all of my real estate and personal property, the sum of $500 in cash", and, after making certain other bequests, devised and bequeathed the residue of his real and personal estate to his children and their heirs; that on September 7, 1875, James R. Lindley, executor of the will, filed in the Howard Circuit Court, his petition to sell the real estate of the decedent to make assets for the purpose of paying the debts of said decedent; that said court ordered such sale, and notices were duly published and the sale had, the purchaser being one William Elliott; that appellee was named in the executor's petition, but did not appear

to said petition nor to the proceedings to sell real estate, but therein wholly made default; that decedent's widow, Rachel Elliott, refused to accept the provisions made for her in said will, but elected to take all her rights under the law as surviving widow; that she afterwards, while the wife of her second husband, Samuel Kizer, executed two quitclaim deeds, therein conveying all of her interest in said real estate to said William Elliott, said deeds bearing dates of May 18, 1877, and February 22, 1881; that appellant George W. Stone claims to be the owner and holds possession of said real estate under a regular chain of conveyances from said William Elliott; that said Rachel, decedent's widow, died February 27, 1904; that appellee never received from the estate of his deceased father any part thereof, and that he never executed any deed or conveyance of his interest in the real estate described in the pleadings to anyone; that each of the other children of Jacob Elliott, deceased, has executed to one of the remote grantors of appellant, George W. Stone, deeds of conveyance of his respective interest in said real estate. Upon this finding of facts, the court stated its conclusions of law to be with appellee, and in this appellants insist that the trial court erred.

The first question here presented is, What estate did Rachel Elliott take in the lands of her deceased husband, Jacob Elliott? He died in 1875, seized of the land

1. in fee simple; his widow, Rachel Elliott, had been his second wife and was childless; at the time of his death Jacob Elliott had seven living children. The statutes in force at the time of his death, in 1875, must be looked to for an answer to this question, and upon reading these statutes it is plain that the answer must be found in the first part of §17, and the proviso of §24. These should be read as though they were written as follows: "If a husband die testate, or intestate, leaving a widow, one-third of his real estate shall descend to her in fee simple, free from all demands of creditors; Provided that if a man marry a

second or other subsequent wife, and has, by her, no children, but has children alive by a previous wife, the land which, at his death descends to such wife, shall, at her death, descend to his children.'' 1 G. & H. 294, 295, 1 R. S. 1852 pp. 250, 251. If the interpretation of these provisions could be undertaken upon consideration of the legislative language, read in the light of the established rules for our guidance in such matters, there would be little difficulty in arriving at the correct result. That the plain words of the statute cast upon the widow by descent one-third of the lands of which her husband died seized, ''in fee simple, free from all demands of creditors'' is too plain to seriously question; and in the event that the widow has been a second wife and is childless, and the husband left children by a previous marriage, it is just as plain that, upon the death of the widow, such children take the lands which have descended from their father to the widow, by inheritance from her as her heirs. Upon first impression the words used by the legislature can have no other import, but, unfortunately, the court is not at liberty to so treat the matter, but must have due regard to the interpretation heretofore placed upon these provisions. Therefore let us find what the law of this State, applicable to the facts with which we have to deal, was in August, 1875; for then the widow's rights arose, and it was under the law as interpreted at that time, that her title vested.

It must not be overlooked that the claim of title asserted by appellant, grows out of the fact that he derives such right as he has, pursuant to a sale of the lands to pay the debts of the decedent, Jacob Elliott. The appellant stands in his relation to the widow, and those claiming under her, in the attitude of the creditors through whose rights he derives his claim. In *Martindale* v. *Martindale* (1858), 10 Ind. 566, which was a proceeding in partition by the childless widow, against the children by a previous marriage of the deceased husband, the judgment of the lower court was re-

versed, because the court had set off to the widow one-third of her deceased husband's lands in fee, instead of for her natural life only. This case was followed in *Ogle* v. *Stoops* (1858), 11 Ind. 380, and in *Rockhill* v. *Nelson* (1865), 24 Ind. 422, which, in its facts, was in all respects similar to *Martindale* v. *Martindale, supra,* the court, which meanwhile had undergone an entire change of judges, sets forth at length the argument of counsel in support of the contention that the statutes meant what they said, and proceeds as follows: "This position, so forcibly put, addressed to this court before the decision in *Martindale* v. *Marlindale, supra,* would have been entitled to grave consideration; and it is, indeed, difficult to see how it could have been met by legal argument. But there are some questions in law, the final settlement of which, is vastly more important than how they are settled; and among these rules of property, long recognized and acted upon, and under which rights have vested." The Martindale case was followed.

The case of *Louden* v. *James* (1869), 31 Ind. 69, decided at the May term, 1869, was the first case in this court in which the creditors of the deceased landowner were involved in the litigation, and upon its consideration, the mind of the court was directed to the effect of the earlier decisions upon the rights of the widow and heirs as against the creditors. The court perceived at once that the earlier interpretation of the proviso of §24, *supra,* was leading to consequences that probably were not considered by the court at the time of the decision of the cases involving only the childless widow and the children of the husband by a previous marriage. In order to evade these consequences, it seems that the court, instead of disapproving and overruling the earlier cases, undertook to distinguish them from the case then under review upon the notion that as between the widow and the children by the previous marriage, the effect of the proviso was to cast upon the widow only an estate for life, while as between the children of the previous mar-

riage, and creditors of the estate of their deceased father, the proviso did not have effect to cut down the estate in fee, which descended to the widow under §17, *supra*. The court puts the matter in this way on page 70: "But the question now here is altogether different. It is not, what does the widow take as against the children of the intestate? but it is, what does she take as against his creditors? The statute answers this question so plainly and expressly that there seems no room for construction. 'If a husband die testate, or intestate, leaving a widow, one-third of his real estate shall descend to her in fee simple, *free from all demands of creditors.*' 1 G. & H. 294, Sec. 17." 1 R. S. 1852 p. 250. And then the language of the proviso to §24 is just as plain, that this fee simple which, as against creditors, the second wife without children takes on the death of her husband, shall at her death descend to his children. Language so plain can not be disregarded. The court says further: "It is not attempted to reconcile the present decision with the broad language contained in the opinions delivered in *Martindale* v. *Martindale* and *Ogle* v. *Stoops, supra*. Those cases are simply deemed to settle the very question then before the court, and nothing beyond." And again: "The sixteenth section expressly abolished dower, and the seventeenth, as against creditors, gives the widow, in a case like this, an estate in fee simple, to go on her death to the husband's children—and this would be interpreted to mean that the widow takes an estate in dower only, against anybody, whether child or creditor. Does the judicial function * * * go to the extent of overruling the plain language and equally plain intention of the legislature?" In the case of *Longlois* v. *Longlois* (1874), 48 Ind. 60, the assertion that "these cases [*Martindale* v. *Martindale, Ogle* v. *Stoops*, and *Rockhill* v. *Nelson, supra*] were again recognized as a correct exposition of the statute in the case of *Louden* v. *James* [1869], 31 Ind. 69" should be considered with the opinion in that case, for therein it does not appear that the

court was seriously impressed with the correctness of these earlier cases, and it must be remembered that the Longlois and Martindale cases were the same kind of cases and presented in the same way, that is, a partition proceeding by a childless widow against the children of her deceased husband by a prior marriage, and in the Longlois case the court awarded the widow only an estate for life upon the rule of *stare decisis.* This case was decided at the November term, 1874, and was the last expression by this court upon the subject prior to the death of Jacob Elliott (August, 1875) as in *Russell* v. *Russell* (1874), 48 Ind. 456.

What was the state of the law relating to the subject in issue at the time of Jacob Elliott's death? The controversy in the case under consideration is not between the childless widow and the children of her deceased husband by a previous marriage. It is between one of the children by the previous marriage and one who claims under, and stands in the shoes of, creditors. It is quite clear that at the time of the death of Jacob Elliott, there were two distinct lines of decisions by this court involving the interpretation of §17 and the proviso of §24 of the statute of descents, one line affirming that under these provisions the childless widow took, as against the children of her husband by a previous marriage, only an estate for life; the other line declaring that, as between the children of the previous marriage and creditors of their deceased father, the estate which descended to the widow was an estate in fee simple, which upon her death, descended to the children from her. Within which of these rules does the case at bar fall? The executor

2. of the last will of Jacob Elliott was in the nature of the trustee of an express trust. He was the representative of the estate and of the creditors. *Blankenbaker* v. *Bank of Commerce* (1882), 85 Ind. 459; *Moncrief* v. *Moncrief* (1881), 73 Ind. 587; *Bennett* v. *Gaddis* (1881), 79 Ind. 347; *Henry* v. *State, ex rel.* (1884), 98 Ind. 381; *Raugh* v. *Weis* (1894), 138 Ind. 42; *Nugent* v. *Laduke*

(1882), 87 Ind. 482; *Smith* v. *Calloway* (1844), 7 Blackf. 86; *Hildebrand* v. *Kinney* (1909), 172 Ind. 447, 19 Ann. Cas. 788; *Nelson* v. *Hart* (1856), 8 Ind. 293; *Pierce* v. *Holzer* (1887), 65 Mich. 263, 32 N. W. 431; *Ford* v. *First Nat. Bank* (1903), 201 Ill. 120, 66 N. E. 316; *Dandridge* v. *Washington's Exrs.* (1829), 2 Pet. 370, 7 L. Ed. 454; 18 Cyc. 206 A, notes 59, 60, 61; 18 Cyc. 708; *Ledoux* v. *Bank* (1897), 48 N. Y. Supp. 771; *Bartlett* v. *Hyde* (1834), 3 Mo. 490; *Hughes* v. *Menefee* (1888), 29 Mo. App. 19. When it developed that the personal effects of the decedent

3. were insufficient to pay the debts and liabilities of his estate, the law made his general debts a lien upon his lands, subject, of course, to the statutory rights of the widow. *Chaplain* v. *Sullivan* (1891), 128 Ind. 50; *Falley* v. *Gribling* (1891), 128 Ind. 110; *Dunning* v. *Seward* (1883), 90 Ind. 63; *Duncan* v. *Gainey* (1886), 108 Ind. 579. When, therefore, the executor of the will of Jacob Elliott pro-

1. ceeded by petition to subject his lands to the payment of his debts, his action was for and on behalf of the creditors, whom he represented, and his petition was in the nature of a bill to foreclose the lien. The executor propounded his petition, procured the order of sale and sold the lands in his representative capacity for, and on behalf of, his *cestuis que trustent,* the creditors. He was their trustee; what he did, they did. The source of the title of the appellant, therefore, was the lien which the creditors of Jacob Elliott had upon the lands. He claims under the creditors and his title is the same that the title of the creditors would have been if they had purchased the land at the executor's sale. The result of this is that the controversy here is between a descendent of Jacob Elliott and one who stands to him and to the land in the relation of a creditor. At the time that he died it was the law of this State that, as between his children by a previous wife and his creditors, one-third of his lands descended to his widow in fee simple,

and in respect to the lands which so descended to her, the children by the previous wife of Jacob Elliott stood in relation to her as expectant heirs.

Some confusion has arisen in the opinions of this court arising out of the idea, apparently, that the laws of nature have something to do with the making of heirs. There have been attempts by the use of the word "forced" and other words of description, to distinguish the heirs designated by the proviso of §24 from the heirs who are related to the ancestor by blood. The supposition upon which this has been done is erroneous. The right to inherit is not a natural right. It does not inhere in any one. It is a creature of the law, and its existence and limitations must be found in the law. 2 Blackstone, Comm. (Chap. 1), 10, 11, 12 and 13; *United States* v. *Perkins* (1896), 163 U. S. 625, 16 Sup. Ct. 1073, 41 L. Ed. 287; *Plummer* v. *Coler* (1900), 178 U. S. 115, 20 Sup. Ct. 829, 44 L. Ed. 998; *Strode* v. *Commonwealth* (1866), 52 Pa. St. 181; *In re Wilmerding* (1897), 117 Cal. 281, 49 Pac. 181; *Mager* v. *Grima* (1850), 8 How. 490, 12 L. Ed. 1168; *Dawson* v. *Godfrey* (1808), 4 Cranch 321, 2 L. Ed. 634; *Henson* v. *Moore* (1882), 104 Ill. 403; *Sturgis* v. *Ewing* (1856), 18 Ill. 176; *Carpenter* v. *Pennsylvania* (1855), 17 How. 456, 15 L. Ed. 127; *Magoun* v. *Illinois Trust, etc., Co.* (1898), 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037; *Eyre* v. *Jacob* (1858), 14 Gratt. (Va.) 422, 73 Am. Dec. 367; *Knowlton* v. *Moore* (1899), 178 U. S. 41, 20 Sup. Ct. 747, 44 L. Ed. 969; 2 Washburn, Real Property 400; *In re Mulford* (1905), 217 Ill. 242, 75 N. E. 345, 1 L. R. A. (N. S.) 341, 108 Am. St. 249, 3 Ann. Cas. 986; *In re Speed* (1905), 216 Ill. 23, 74 N. E. 809, 108 Am. St. 189; *National Safe Deposit Co.* v. *Stead* (1911), 250 Ill. 584, 95 N. E. 973, Ann. Cas. 1912 B 430; *Cloud* v. *Bruce* (1878), 61 Ind. 171; *Anderson* v. *Bell* (1895), 140 Ind. 375, 29 L. R. A. 541; *Donaldson* v. *State, ex rel.* (1915), *post* 615.

Ownership does not extend beyond the life of the owner. The right to transmit title to property to another at the end of the life of the owner did not exist always; it was granted by law, upon considerations of public policy, and the lawmaking power has always retained and still has the authority to designate who shall inherit. When, therefore, the General Assembly of Indiana by enacting the statute of descents designated in each of the several instances who should take the lands of a deceased owner upon the event of his death, it constituted the persons designated "heirs" and among heirs there are no degrees or distinctions, since the right of one to inherit depends upon precisely the same authority as the right of another, namely, the statutes. The children of the deceased husband by a previous wife are heirs to the childless widow, precisely in the same sense, and by the same authority as the same children were heirs to their father. The statute made them heirs in each instance, and it might have cast the inheritance upon any other class of persons with equal effect. It is concluded, therefore, that, in 1875, when Jacob Elliott died, in view of the facts apparent upon the face of the record in this cause, the childless widow, Rachel Elliott, inherited from him one-third part in value of his lands in fee simple, "free from all demands of creditors"; that the fact that her deceased husband left surviving him children by a previous wife did not in any wise affect her title, and that during the lifetime of the widow the children of the previous marriage had no interest in the lands which descended to her, and stood in relation to them, and to the widow, in so far as these lands were concerned in the same relation that any other expectant heirs bear to their ancestor while he lives. This conclusion requires that other questions presented shall be considered.

It is found as a fact by the court that "by two separate quitclaim deeds, respectively, the said Rachel joined with her second husband, Samuel Kizer, and conveyed the real estate to said William Elliott." Did the exe-

cution of these conveyances have any effect upon the title to the lands which descended to the widow? For the purpose of this case, it is necessary to answer this inquiry only in relation to the effect of the deeds after the death of the widow. Whether they operate to convey an estate for the term of her natural life or not is of no moment here. Section 18 of the law of descents contains these words: "If a widow shall marry a second or any subsequent time holding real estate in virtue of any previous marriage, such widow may not, during such marriage, with or without the consent of her husband, alienate such real estate." 1 G. & H. 294, §18, 1 R. S. 1852 p. 250. The section was amended in 1879, (Acts 1879 p. 123, §2484 R. S. 1881), but the amendment is not material here. The purposes of the General Assembly in the enactment of this provision were two, at least; to prescribe that the lands which the woman shall have inherited from her previous husband shall not be disposed of upon the instigation of a subsequent husband, and to leave the same subject to descend to the children of the husband from whom the lands came to the woman, as prescribed in §18, and in the proviso of §24. *Vinnedge* v. *Shaffer* (1871), 35 Ind. 341; *Schlemmer* v. *Rossler* (1877), 59 Ind. 326. These quitclaim deeds were within the very words of the statute and were, in consequence, void.

The petition of the executor to sell the lands of the decedent, Jacob Elliott, to make assets for the payment of his debts seems to have been in all things sufficient under 1. the statutes in force at the time of the proceedings.

There was proper notice; the widow and the children of the decedent made default; and the proceedings of the court culminating in a decree for the sale of the whole of the lands, subject only to an estate in one-third part thereof in the widow during the term of her natural life, were regular and in due form. It was alleged in the petition that "said decedent left surviving him his widow, Rachel Elliott, who being his second wife, and having no children

by the decedent, and the decedent having surviving children
by a former wife, owns but a life estate in one-third of said
real estate'', and it was alleged that the widow had not
elected to accept the provisions made for her by her hus-
band in his will. These were material allegations and they
presented a question of law for the decision of the
court. The default was an admission that the facts
alleged were true. It made quite a difference to the
estate and to the creditors of the decedent, whether
or not the part of the lands which had descended to
the widow upon the death of her husband were ''free
from all demands of creditors''. They were interested in
having the court decide whether their lien was upon the
whole of the lands, subject only to the widow's estate ror
life in one-third thereof, or was upon the undivided two-
thirds part thereof only. This was a matter which the
creditors through the executor, their representative, had
the lawful right to present to a court of justice for deter-
mination and when he did present it, it was not only within
the power, but it was the duty of the court to decide it. In
*Martindale* v. *Martindate, supra; Rockhill* v. *Nelson, supra;*
and *Longlois* v. *Longlois, supra,* the question was presented
in the same way, by the simple allegation that the widow
owned the fee, and these causes were decided upon considera-
tion of this allegation alone. The court that entertained the
petition of the executor and ordered the sale of the whole
of the lands subject only to an estate for her life in the
widow in one-third thereof had jurisdiction of the parties,
and it is not claimed that it did not have jurisdiction of
the general subject-matter. The facts presented called upon
it to decide a question of law. The court responded and ren-
dered its decision. Why were the parties not concluded?
*Daniels* v. *Bruce* (1911), 176 Ind. 151; *State* v. *Wenzel*
(1881), 77 Ind. 428; *Perkins* v. *Hayward* (1892), 132 Ind.
95, 103; *State, ex rel.* v. *Wolever* (1891), 127 Ind. 306, 315;

*Myers* v. *Boyd* (1896), 144 Ind. 496. It can not be pretended that the question presented for the decision of the court was not a substantial one. At that time it had been decided by the Supreme Court in two ways. The opinions in some of the cases criticized, and were scarcely tolerant of the opinions in others. In the exact form in which it was presented by the petition of the executor it had not been determined at all. The executor, as the representative of the creditors was endeavoring to secure for them all that the law would warrant. The question was, How much of the lands could they reach? This question of law was submitted to the court for decision, in a proceeding to which all persons in interest were before the court, and in response to its plain duty the court decided it.

In *Koepke* v. *Hill* (1901), 157 Ind. 172, 176, 87 Am. St. 161, it was held that a judgment of conviction of a crime under an unconstitutional statute was not subject to collateral attack. After noting the holdings in some other jurisdictions the court said: "In this State, however, the holdings have been to the effect that, whenever a court is confronted with a question which it has a right to decide correctly, its erroneous judgment will not be subject to collateral attack, irrespective of whether the mistake of law concerned the common, or statutory, or constitutional law." Various authorities are cited with approval, Van Fleet, Collat. Attack §75. See, also, *Board, etc.* v. *Bradley* (1876), 53 Ind. 422; *Cassel* v. *Scott* (1861), 17 Ind. 514; *Snelson* v. *State, ex rel.* (1861), 16 Ind. 29. In his work on collateral attack VanFleet says, regarding the question of jurisdiction: "The true rule seems to be that if the question is *colorable*,—such as a person unskilled in the law might mistake—it will shield the decision from collateral assault." VanFleet, Collat. Attack §66. It can not be said that in 1876 the question was not colorable. It was then fairly debatable. Even now, in the light of *Utterbach* v. *Terhune*

(1881), 75 Ind. 363, and cases following it, counsel for appellant contend that *Louden* v. *James, supra,* was overruled by *Longlois* v. *Longlois, supra,* and *Russell* v. *Russell, supra.* When the latter cases were decided, another change in the personnel of the bench had occurred. The court followed the Martindale case, without qualification, and held that the childless widow took only a life estate. In *Louden* v. *James, supra,* the court had said: "It is not attempted to reconcile the present decision with the broad language contained in the opinions in *Martindale* v. *Martindale* and *Ogle* v. *Stoops, supra.*" Such attempt would have involved the logical difficulty of holding, today, in a partition proceeding between heirs, that the widow inherited a life estate only, while to-morrow, in a probate proceeding it must be held that she inherited a fee. No reconcilation was attempted in *Longlois* v. *Longlois, supra,* or *Russell* v. *Russell, supra,* and it is not surprising that in 1876 the judge of the Howard Circuit Court, and other judges, in proceedings to sell decedents' real estate held, (as numerous ones did), that the second or subsequent childless widow inherited a life estate only. No doubt the decision was wrong. The case of *Louden* v. *James, supra,* should have governed the action of the court, notwithstanding *Longlois* v. *Longlois, supra,* but the power to decide includes the power to decide wrong, and an erroneous decision, at least on a colorable question, resists a collateral attack as firmly as does a decision correct in law.

The action of the court in ordering the executor to sell the lands involved the decision of these questions of law: (1) Did the children of Jacob Elliott have any present interest in the portion of the lands which descended to the widow? (2) What was the nature and extent of that interest? (3) Was the same subject to the lien of the creditors? The court necessarily answered each of these interrogatories. It decided that the children owned the fee in the portion of the land which descended to

the widow, subject only to an estate therein in her during her natural life, that the children became such owners by inheritance from their father, Jacob Elliott, and that their estate was subject to the lien of the creditors. In point of law the widow's one-third part of the land was not subject to sale. It had descended to her "free from all demands of creditors", and in so far as creditors were concerned, she held the lands precisely as she would have held them if she had been the mother of the decedent's children. This is what the court should have decided. The proposition is plainer now than it was then, in view of the existing confusion in the decisions of this court. The court decided the matter by the use of such aid as it had, and erred in its conclusion; but it was a court; it had jurisdiction; the parties in interest were before it; and the question was presented. If there is any reason why the parties were not concluded by the order to sell, it is not a legal reason. The law concludes them, and it is with the law the court is dealing. Let us illustrate. A is the owner in fee simple of a parcel of land. B, as the administrator of the estate of C, files his petition for an order to sell lands to make assets to pay the debts and liabilities of the estate. A is made a party to the petition and is served with process. In the petition the administrator describes the lands that belong to A, and alleges that C died the owner of them in fee, and asks for their sale. Upon this record the court hears the matter and orders the lands sold. The lands are sold, the sale is confirmed, and a conveyance is made to the purchaser. Will anybody pretend that A could attack this order, and this deed, in a collateral proceeding?

In 1876, when the lands involved in this controversy were sold by the executor, in pursuance of the order of court, there was nothing in the opinions and decisions of this court that cast any doubt upon the power of the court to hear and determine the matters that were heard and determined under the petition to sell the lands. The legal atmos-

phere was clear when the purchaser at the sale paid his money, supposing that he was getting that which he bought. The question now arises as to whether he was misled, to .his injury, into parting with his money. Was he entitled to rely upon a judgment of a competent court having jurisdiction of the subject-matter and of the parties in interest, rendered in a proceeding that it was required by law to conclude, and in which the exact question now raised was presented and decided? In the executor's proceeding to sell the lands of Jacob Elliott there was presented and decided an issue of law arising upon facts that were properly before the court. This question was, Did the widow, Rachel Elliott, inherit from her deceased husband, Jacob Elliott, an estate for life only in one-third part in value of the lands whereof he died seized, and did the remainder in fee descend to the children of Jacob Elliott by his previous wife? This issue of law the court decided in the affirmative. If this decision was right under the law, the children did have an estate in the lands which descended to the widow; if it was wrong the fact remains that a competent court so adjudged in a proceeding to which these children were parties. The decision was in their favor. It gave them a present estate in fee, subject only to the widow's life estate. It has been acquiesced in and acted upon by all the children except the appellee.

At the May term, 1881, this court decided the case of *Chisham* v. *Way* (1881), 73 Ind. 362. In that case, there had been a partition suit in 1865, instituted by the children of the decedent by a previous wife, against his widow, who had been his second wife and was childless. The court had decided that the widow held a life estate in one-third of the land; and that the land was not divisible and should be sold. Sale was made by a commissioner and the widow became the purchaser. The sale was confirmed, and the court appointed a trustee to hold one-third of the proceeds. The commissioner had paid one-third of the proceeds to the trus-

tee, and the trustee had loaned the same to the widow who made him her note therefor, with John Sanders and William D. Chisham as her sureties. Upon this note the trustee had obtained a judgment against the makers, and execution had been levied upon the lands of Chisham. The action was to require the trustee to account, to have the judgment declared satisfied, and to enjoin the collection on the ground that the fund belonged to the widow. The judgment of the lower court for the defendants was affirmed. In the opinion, however, the court indicates that most of the matters that had been determined in these various proceedings were erroneous, and an attempt is made to point out a method by which the same might be set right. It is decided apparently that the widow had held an estate for life in one-third of the lands, and that the proceeds of the sale of the widow's share should have been divided between her and the children who had been tenants in remainder, presumably by ascertaining the present worth and awarding it to the widow, and yielding the residue to the children. The opinion contains this dictum: ''The trustee, in pursuance of the order of the court, took control of the fund. Afterward, the court ordered the commissioner to pay the whole of it to the appellant Nancy [the widow], and in this case the court below adjudged it to be rightfully held by the trustee. Both orders were wrong, and so are the positions of both parties. If the record was in shape to enforce the final order in the partition proceeding, it would result in manifold injustice to the appellees Jesse and Louisa [the children]; and if the record in this cause fixed the right of the trustee, Laswell, to hold the money during the life of appellant Nancy, it would result in manifest injustice to her. Fortunately, however, these records do not conclude either party, and justice under the forms of law may yet be done to all.'' This case is noticed somewhat at length, because it seems to have been the first utterance of this court in derogation of the efficiency of an order of sale to conclude the parties to it in respect

to lands involved. It will be observed that the declaration to the effect that the order of the court made in the partition suit, requiring the commissioner to pay the whole of the fund to the widow, is declared to have been void. Was it void because the money had passed already into the hands of the trustee, or for some other reason? The question is not answered.

In *Utterback* v. *Terhune, supra,* decided at the May term, 1881, which in its essential facts was precisely the same as *Martindale* v. *Martindale, supra,* it was determined that the second childless widow inherited her lands in fee, and it was intimated, by way of dictum, upon the authority of *Avery* v. *Akins* (1881), 74 Ind. 283, that a decree of partition had effect only to sever the unity of possession, and not to vest in any of the parties any new title. It is interesting to note this, in view of the circumstance that *Martindale* v. *Martindale, supra,* and the other cases following it, were suits in partition. At the November term, 1881, this court decided the case of *Armstrong* v. *Cavitt* (1881), 78 Ind. 476. It was a suit in partition by the children of a decedent by a previous wife, against the remote grantee of the administrator of their father's estate, in pursuance of an order of a competent court, upon the petition of the administrator. At the time of the proceeding there was a childless widow, and she and the children of the previous wife were parties, were served with notice, and in the case of the children, there was an answer by their guardian *ad litem.* The widow made default. Upon this state of facts the court decided: (1) That the childless widow took one-third in value of her deceased husband's lands in fee. (2) That the children by the previous wife had no interest in the lands which descended to the widow, during her lifetime. And, (3) that the court had no jurisdiction to order this sale of the widow's inheritance, upon the petition of the administrator, and could not acquire such jurisdiction. The first and second of these propositions are sound beyond question, but it can-

not be conceded without protest that the mere fact that the
children had no interest in the lands during the life of the
widow precluded the court from acquiring jurisdiction of
their persons in the administrator's proceeding, and it seems
plain that the proposition that the court was without juris-
diction to decide whether the lands which descended to the
widow were subject to sale under the circumstances of the
case, is unsound. The order of sale was made in 1866. At
that time the law of this State was in an unsettled condition
because of the manner in which this court had dealt with
§17 and the proviso of §24 of the law of descents. Whether
the childless widow inherited the fee or but an estate for life
in one-third of her deceased husband's lands was a question
of law, and in respect to it there was a difference of opinion.
The administrator was charged with an important duty. It
was necessary for him to procure assets for the discharge of
the decedent's debts and the liabilities of the estate; it was
essential that there should be a determination in respect to
what part of the decedent's lands he was authorized to sell.
There was no dispute about the facts, they were admitted,
but what was the law? The children by the previous wife
were interested also in the decision of this question. If
the widow had but a life estate and they owned the fee in
remainder, and the words of §17 of the statute of descents
"free from all demands of creditors" applied only to the
estate taken by the widow, and did not forbid the adminis-
trator to resort to the estate in remainder, the matter was
of the utmost importance to the children; if on the other
hand, the widow took the fee and the children of the pre-
vious wife were merely her heirs and the lands descended
to the widow absolutely divested of all liability to be sold
to make assets, they were interested in having the matter
put at rest. The administrator had proceeded upon the
theory that the widow's estate was for her life and, that the
lands which had descended to her were "free from all de-
mands of creditors" only while she held them, and that

the fee simple estate in the remainder was subject to sale. The widow who in fact owned the fee, and the children who owned nothing, were made parties to the proceeding and it was the decision of the court that the widow owned but an estate for life, that the remainder belonged to the children in fee simple, that the words of the statute "free from all demands of creditors" affected only the estate of the widow and that the creditor's lien extended to and encumbered the remainder that had descended from the father to the children of the previous marriage. In other words, a competent court, in a proceeding to which both the widow and the children were parties, had presented to it the question of law as to whether the children had an estate in remainder in the lands, which was subject to the debts and liabilities of the estate of their deceased father. It was a question of paramount importance to the widow, to the children and to the creditors of the estate; it was a question that the necessities of the occasion required should be determined; it was duly presented to a competent court and was determined by legal judgment. The purchaser of the lands relying upon this judicial determination paid out his money in good faith, believing that he was acquiring title to the whole of the lands, but notwithstanding these things, it appears by this decision that the court could not have acquired and did not acquire jurisdiction either of the persons of the children of the previous wife, or of the subject-matter of the proceeding in so far as the widow's interest in the land was involved. The only reason advanced in respect to the jurisdiction of the court of the persons of the children is that at the time of the proceeding the children had no interest in the land, which at that time belonged to the widow in fee simple. The statement of this reason leaves out of view the essential circumstance that it was the administrator's contention that the widow's estate was for life only; that the children by the previous marriage did have a then present interest in the lands which had descended to the widow from their father,

that the lands were "free from all demands of creditors" only during the widow's life, and that the creditor's lien extended to the fee in the whole of the lands, subject only to the estate for life of the widow in one-third thereof. This required the court to determine judicially in the first instance whether in point of law the children of the previous marriage then had an interest in the lands that was subject to the lien of the creditors. This was a judicial question, the solution of which was essential to the entering of a decree. It had to be decided, and each of the parties interested had the right to have it settled.

The powers of a court extend to the determination of questions relating to its own jurisdiction. The power is to decide; it is not restricted to decision without error. In the case under review, the first thing that the court did was to determine that it had jurisdiction to entertain the proceeding, and to decide the matters presented. This is an irresistible inference from the fact that the court did entertain the proceeding and did so decide. The decision of this point was a judicial act, done in the course of the proceeding, and it was as final and as conclusive against collateral attack as any other judicial decision. It is a serious mistake to suppose that the decision of the court, that it had jurisdiction of the persons of the defendants, was void merely because it was erroneous. The children by the previous wife were parties to the judgment; their remedy was by appeal and they were cut off from the right to assail the judgment collaterally. The same may be said upon the subject of the jurisdiction of the court of the subject-matter. By acting at all with reference to the share in the lands that had descended to the widow, the court determined, necessarily, that it had jurisdiction to deal with it. When the court had so determined, whether right or wrong, the parties to the judgment were bound by the decision until it should be overcome in some direct proceeding. There was no appeal. The attack upon the judgment of the court was collateral.

The reason given by the learned judge in the opinion in *Armstrong* v. *Cavitt, supra,* 482, when considered with reference to elementary legal principles, would have been excellent support to an argument addressed to the court during the proceedings under the administrator's petition to sell, and in the light of the more recent decisions of this court it is apparent that they should have controlled its action. The language of the opinion is: "Her interest in the real estate, under the law, descended to Samantha Armstrong in fee simple free from all demands of creditors of her deceased husband, and, therefore, was not subject to be converted into assets for the payment of his debts. The decedent's administrator had no better legal right, as it seems to us, to apply for an order to sell, or to sell, the real estate which descended to said Samantha Armstrong, then he had to apply for such an order to sell, or to sell, the real estate of any other living freeholder in Rush County, in no manner connected with his decedent." Let it be admitted without any reservation that all these things are true. What then? Do they even tend to prove that a judgment ordering the sale may be attacked collaterally? Do they supply any reason in support of the assertion that the court was without jurisdiction of the subject-matter? Do they have effect to convince anyone that a purchaser of the lands in good faith should be despoiled of that which he has bought in reliance upon the solemn judgment of a court of justice pronounced in a proceeding to which every person interested was a party?

When A sues B upon an open account the law gives to B his day in court, and if he does not owe the account, it is upon that day that he must assert his defense. If he makes defense and loses, or if he makes default, the judgment against him will be beyond the reach of any collateral attack. Even if it should happen that B is a woman, even a widow, the circumstance would make no change in the law. The time to resist an attack in court is when the attack is made.

After judgment the remedy can not be by collateral process in impeachment of the judgment.

It is conceded that the administrator had no right to an order for the sale of the widow's share in the land. The court should have refused to grant it, but the difficulty here is that the court did not refuse. In a perfectly judicial way, in a judicial proceeding, with all parties in interest before the court, it decided a question of law that was presented upon the pleadings and the admitted facts, and its decision resulted in an order directing the administrator to sell the whole of the land subject only to the widow's estate for life in one-third of it, and in doing so the court determined, not merely that the lands were subject to the lien of the creditors, but also, and necessarily, that the children of the previous wife had an estate in the portion of the lands that had descended to the widow with which it had jurisdiction to deal. That the court had power to determine finally that it did or did not have jurisdiction of the subject-matter and to conclude the parties to the record by its decision, is so well settled by this court that the matter is no longer open to question. In *Bruce* v. *Osgood* (1900), 154 Ind. 375, 378, this court in passing upon the question said: "The question is not whether in truth, as this court might decide on appeal, the Superior Court of Marion County had jurisdiction of the particular case, but whether that court was competent to decide that it had jurisdiction and whether it must have so decided before proceeding to judgment. The statutes above referred to gave the court jurisdiction to entertain and decide actions of this class. Whether the particular case in question actually belonged to the class, is immaterial. The court was called upon to decide whether it did. Its judgment, if conceded to be wrong, is impervious to collateral attack. *State, ex rel.* v. *Jackson* [1889], 118 Ind. 553; *Jackson* v. *Smith* [1889], 120 Ind. 520, 523; *Alexander* v. *Gill* [1892], 130 Ind. 485; *Tucker* v. *Sellers* [1892], 130 Ind. 514; *Evans-*

*ville Ice, etc., Co.* v. *Winsor* [1897], 148 Ind. 682; VanFleet, Collat. Attack §66.'' See, also, *DeHaven* v. *Covalt* (1882), 83 Ind. 344; *Robertson* v. *Huffman* (1883), 92 Ind. 247; *Lee* v. *McClelland* (1901), 157 Ind. 84; *Emerick* v. *Miller* (1902), 159 Ind. 317; *Ryan* v. *Rhodes* (1906), 167 Ind. 121, 125; *First Nat. Bank* v. *Hanna* (1895), 12 Ind. App. 240; *Soules* v. *Robinson* (1902), 158 Ind. 97, 92 Am. St. 301; *Cunningham* v. *Tuley* (1900), 154 Ind. 270.

It will not be pretended that the court of common pleas did not have general jurisdiction of the subject of the sale of lands of decedents to make assets for the payment of debts. It is apparent that the court decided that it had jurisdiction of the particular subject-matter and of the parties to the proceeding. It assumed to order the sale of the fee in the whole of the lands, and this order was the basis of the title of appellees in *Armstrong* v. *Cavitt, supra*. The ruling in that case cannot be sustained upon any legal principle. The effect of the decision is to sustain the proposition that a court has not power to render an erroneous judgment which will withstand a collateral attack. *Armstrong* v. *Cavitt, supra,* has been acquiesced in by this court a number of times. No one has ever succeeded in setting forth any foundation upon which it can remain as a correct application of the law. The same is hereby overruled. The appellant in this case was entitled to keep the land which he had purchased in good faith, in reliance upon the judgment of a competent court having general jurisdiction of the subject-matter and complete jurisdiction of the parties in interest.

Judgment reversed.

Note.—Reported in 106 N. E. 710. As to laches of executor or administrator in applying for order of sale to pay debts of estate, see 26 Am. St. 22. See, also, under (1) 18 Cyc. 749; (3) 18 Cyc. 591; (4) 14 Cyc. 16; (5) 14 Cyc. 75; (6) 23 Cyc. 753; (7) 23 Cyc. 1090; (8) 11 Cyc. 701.