THIRD NATIONAL BANK OF ST. PAUL *vs.* STILLWATER GAS COMPANY, impleaded, etc.

| 36 | 75 |
|----|-----|
| 59 | 375 |
| 36 | 75 |
| 73 | 280 |
| 36 | 75 |
| 78 | 360 |

November 22, 1886.

**Property Obtained by Fraud—Title.—**A person obtaining property by fraud acquires no title to it, but it is held by him, and all persons claiming under him with notice, in trust for the original owner.

**Same—Identification of Property.—**Equity will follow money or other property through any number of transmutations, and preserve it for the owner, either in its original or substituted form. So long as it can be traced and identified, either in its original or substituted form, it belongs to the original owner if he elects to claim it.

**Same—Fund Deposited in Bank.—**Although the relation between a bank and its depositor is that merely of debtor and creditor, yet the fund does not change its character from the fact that the money has been deposited in bank to the credit of the depositor. If the money in his hands was impressed with a trust in favor of another, the deposit will remain subject to the same trust.

Appeal by the Stillwater Gas Company (impleaded with E. W. Kerr and the administrator of R. W. Kerr) from an order of the district court for Washington county, *Crosby*, J., presiding, overruling its demurrer to the complaint. The action is brought to have a trust in favor of plaintiff impressed upon the sum of $3,500, alleged to be in possession of the appellant. The complaint is, in substance, as follows:

On June 30, 1885, one R. W. Kerr falsely and fraudulently represented to the plaintiff that he was the owner of certain shares of capital stock of the Stillwater Water Company, which were worth the sum of $5,000 and more. The plaintiff, induced by such representations, agreed to lend Kerr the sum of $3,600 upon such shares, which were to be assigned to it as collateral security. In pursuance of this agreement, the plaintiff received the note of Kerr for $3,600, due in 90 days, and a pretended assignment of the shares of stock, and lent Kerr the sum of $3,600, less the interest ($100) paid in advance, by placing $3,500 to the credit of Kerr in his deposit account with the plaintiff. Kerr, being about to leave the state, drew his check on the plaintiff for the sum of $3,500, and delivered it to his brother, E. W. Kerr, with instructions to procure its collection through a bank at Stillwater, and to have the proceeds placed to his (E. W. Kerr's) credit in the Stillwater bank, to be checked out by him for certain specified purposes and none other. The Stillwater bank undertook the collection of the check through its correspondent in St. Paul. Upon its presentment the plaintiff paid the amount thereof, which was transmitted to the Stillwater bank, and passed to the credit of E. W. Kerr, and held subject to his order. R. W. Kerr never owned any stock in the Stillwater Water Company, and the plaintiff had no knowledge that his representations, upon the faith and credit of which it had made the loan, were false until it had paid the above-mentioned check. The plaintiff is in possession of the note of R. W. Kerr and his pretended assignment of stock, but makes no claim thereto and never has from the time it had knowledge of the false representations of R. W. Kerr, and no part of the loan has been repaid. The defendant, learning of the deposit in the Stillwater bank, induced E. W. Kerr, by means

of false representation of authority from R. W. Kerr, to give it a check for the amount (less a few dollars theretofore checked out) upon the Stillwater bank, which check was presented by defendant and paid to it by the bank. The payment by E. W. Kerr to the defendant was not within the authority which had been given to him by his brother, nor did R. W. Kerr authorize, ratify, or confirm it, but disaffirmed and repudiated it. R. W. Kerr having died intestate, his heirs and administrators have continued to repudiate and disaffirm such payment to defendant. Neither plaintiff nor defendant had knowledge of the fraud practised by R. W. Kerr in negotiating the loan. Plaintiff, as soon as it discovered the fraud practised upon it and the payment of the money to defendant, made demand therefor upon the defendant, which demand was refused.

*Searles, Ewing & Gail,* for appellant.

*C. E. & A. G. Otis* and *Fayette Marsh,* for respondent.

MITCHELL, J. Appeal from an order overruling a demurrer to the complaint. The question raised by the appeal is whether, upon facts alleged in the complaint, the respondent is entitled to have a trust in its favor impressed upon a certain sum of money in the hands of appellant.

These facts, so far as they bear upon the question, are, we think, fairly stated in the brief of respondent. They may be, perhaps, even more briefly stated, according to their legal import, as follows: R. W. Kerr, by fraud and deceit, obtained from respondent a loan of $3,500, the amount being placed to his credit, and subject to his draft or check, in respondent's bank. Kerr afterwards drew out the money, and placed it in the possession and control of E. W. Kerr, as his agent, by causing it to be deposited in a bank in Stillwater to the credit, and subject to the check, of said E. W. Kerr. Subsequently the appellant, by fraud and false pretences, induced E. W. Kerr, as agent of R. W. Kerr, to pay over the money to it, (the appellant,) which he did by check upon the Stillwater bank. Subsequently R. W. Kerr died insolvent. To impress this money in the hands of appellant with a trust in favor of respondent, and to recover the same, this action is brought.

It is elementary that a person obtaining property by fraud acquires no title to it, but it is held by him, and by all persons claiming under him with notice, in trust for the original owner. So long as the property can be identified in its original or in a substituted form, it belongs to the original owner, if he elects to claim it; and, if it passes into the hands of an innocent purchaser for value, the title of the defrauded owner, at his option, at once attaches to the avails, so long as their identity is preserved, no matter how many transmutations of form the property has passed through. So long as the trust property can be traced and followed into other property into which it has been converted, that remains subject to the trust. The product or substitute has the nature of the original imparted to it. The depositing of trust money in a bank, although it creates the relation of debtor and creditor between the bank and the depositor, does not change its character, or relieve the deposit from the trust. It is not the identity of the form, but the substantial identity of the fund itself, which is the important thing. In support of these propositions, and as illustrating the extent to which courts of equity have carried this principle, see *Taylor* v. *Plumer*, 3 Maule & S. 562; *Pennell* v. *Deffell*, 4 De Gex, M. & G. 372–387; *Frith* v. *Cartland*, 2 Hem. & M. 417; *Knatchbull* v. *Hallett*, 13 Ch. Div. 696; *Overseers of Poor* v. *Bank*, 2 Grat. 544, (44 Am. Dec. 399;) *Van Alen* v. *American Nat. Bank*, 52 N. Y. 1; *People* v. *City Bank*, 96 N. Y. 32; *Cragie* v. *Hadley*, 99 N. Y. 131, (1 N. E. Rep. 537;) *Whitley* v. *Foy*, 6 Jones, Eq. 34, (78 Am. Dec. 236;) *Farmers' & Mech. Nat. Bank* v. *King*, 57 Pa. St. 202; *Peak* v. *Ellicott*, 30 Kan. 156, (1 Pac. Rep. 499;) *National Bank* v. *Insurance Co.*, 104 U. S. 54; *McLeod* v. *Evans*, 66 Wis. 401, (28 N. W. Rep. 173.)

Some cases go so far as to hold that the trust character still adheres to money, even though it cannot be traced into any specific property. In the case at bar it is not necessary to go to any such length in order to charge this money in the hands of appellant with a trust in favor of respondent. Notwithstanding the various changes and transmutations through which it has passed, the money that has gone into the hands of appellant is readily traced up and identified as the

same money which R. W. Kerr obtained from respondent by fraud and deceit, and is separable and distinguishable from any other property or assets of Kerr. It is unimportant that when appellant fraudulently obtained the money from Kerr it did not know that he had obtained it by fraud from respondent. Kerr certainly could have claimed the money from appellant, and, upon the principles of the cases cited, respondent is at least subrogated to all the rights Kerr had.

This disposes of the main question in the case. The appellant, however, further contends that the complaint is insufficient because it does not allege that at the time of demand, or at the time of bringing suit, it still had the money it had thus fraudulently obtained. It is sufficient answer to this to say that, having traced the money into the appellant's possession, it is presumed to be there still. If the money was returned to Kerr before the demand, that would be a matter of defence.

Some point is made as to the form of the action. If a complaint states a cause of action, it is no ground of demurrer that it prays for the wrong relief. But, with reference to future proceedings, we may add that this action was properly brought as an equitable one, to enforce a constructive trust, in which all parties interested in the disposition of the fund sought to be reached are proper parties.

Order affirmed.