TWOHY MERCANTILE COMPANY v. O. C. MELBYE.

December 15, 1899.

Nos. 11,835—(144).

| 78 | 357 |
| 78 | 361 |
| 78 | 357 |
| s83 | 396 |

## Tracing Trust Fund—Garnishment.

The doctrine that, where property or money has been wrongfully converted, equity will follow it through its transmutations, and impress its product or avails with a trust in favor of the original owner, so long as they can be traced and identified, has its basis in the right of property, and not in any theory of preferring the owner of the property over creditors of the tort feasor, because of the wrongful conversion. It proceeds upon the theory that the product of the converted property has imparted to it the nature of the original property, and belongs to the same person.

## Evidence.

Evidence considered, and *held* not to sufficiently trace and identify the fund, sought to be impressed with a trust, as the avails of the fund wrongfully converted.

Action in the district court for Clay county against O. C. Melbye, defendant, and the First National Bank of St. Paul, garnishee. Thore Alme intervened as claimant of funds disclosed by the garnishee to the amount of $401.55. The issues between the intervenor and plaintiff were tried before Baxter, J., who found that the intervenor was entitled to judgment against the garnishee for $401.55,

and against plaintiff for interest on that sum from January 1, 1898. From an order denying a motion for a new trial, plaintiff appealed. Reversed.

*Tillotson & Campbell* and *Oscar Hallam*, for appellant.

*C. A. Nye*, for respondent.

MITCHELL, J.

In this action the plaintiff on December 31, 1897, garnished the First National Bank of St. Paul, in which, as appeared from the subsequent disclosure, the defendant Melbye had on deposit at that time the sum of $472.61. On August 23, 1898, Alme appeared and filed his claim in intervention, by which he claimed to be the owner of the money on deposit with the garnishee bank, to the amount of $401.55. The facts upon which this claim was based are as follows:

Alme, being indebted to one Odegaard in the sum of $401.55 on a real-estate mortgage, which was due, and which he was desirous to pay, on December 27, 1897, gave to the defendant Melbye that amount in currency, with which to pay the mortgage. Counsel disagree as to whether Alme paid the money to Melbye as Odegaard's agent, or as his own agent to remit the money to Odegaard. In our opinion, this is immaterial. The evidence is conclusive that Melbye was not Odegaard's agent, and had no authority to collect the mortgage. Hence, whichever view is taken of the disputed fact, the money remained the property of Alme, and Melbye held it in trust for him, under either an express or an implied trust. Melbye used Alme's money to pay "grain checks." By whom these checks were issued does not appear. In the absence of evidence on the subject, probably the presumption would be that they were issued by Melbye himself, and were his own obligations. Two or three days afterwards Melbye remitted to the First National Bank of St. Paul a draft or check for $385 on the Thorpe Elevator Company (afterwards honored), and a check for $200 on the Scandinavian American Bank of St. Paul, with request that they be deposited to his credit, which was done. There is no evidence that either the draft or check was in any way the proceeds or avails of Alme's money, which Melbye had used; nor is there any evidence as to the source from which they came. This deposit, to the amount of $472.61, was

standing to Melbye's credit when the bank was garnished. On December 30 Melbye remitted his check on the First National Bank of St. Paul for $401.55 to a bank in Minneapolis, in which Odegaard kept his account, with the request that it be placed to his (Odegaard's) credit; but, as Melbye's account in the bank in St. Paul had been garnished by the plaintiff before this check was presented for payment, it was dishonored, and subsequently returned by the Minneapolis bank to Melbye.

In his testimony in chief, Melbye testified that he sent Alme's money to the First National Bank of St. Paul; but on his cross-examination he admitted the facts to be as above stated, but said that the cleck on the Thorpe Elevator Company was issued in place of the money that Alme had paid him. There is no explanation as to what he meant by this. But, in view of the other evidence, it can mean nothing more than that, having used Alme's money in his own business, he remitted to the St. Paul bank for deposit a draft or check belonging to himself, and not shown to be the proceeds of Alme's money, and then checked against the deposit for the purpose of paying Odegaard the amount which Alme had given him to pay Odegaard's mortgage. Upon this state of facts the trial court ordered judgment in favor of the intervenor against the garnishee bank for $401.55, and against the plaintiff interest on that amount from the date of the garnishment.

It is not claimed, and could not be successfully, that the issuing of the check to the Minneapolis bank in favor of Odegaard operated as an assignment pro tanto of the fund on deposit in the St. Paul bank to Melbye's credit. The intervenor makes his claim on the theory that the money paid by him to Melbye constituted a trust fund, which, in a substituted form, he has traced into the deposit in the First National Bank of St. Paul, standing to Melbye's credit. The evidence is ample to justify a holding that the $401.55 was a trust fund in the hands of Melbye, but it utterly fails to trace the fund, in any form, into the deposit in the hands of the garnishee.

Where the property of one has been wrongfully appropriated by another, the courts hold that so long as the property can be identified, either in its original or in a substituted form, it belongs to the original owner, if he elects to claim it, and, if it passes into the

hands of an innocent purchaser, the title of the defrauded owner, at his option, at once attaches to the avails, so long as their identity is preserved. This doctrine has its basis in the right of property, and not in any theory of a preference to the owner of the property over creditors of the tort feasor because of the unlawful conversion. It proceeds upon the theory that the product or avails of the property have imparted to them the nature of the original property, and belong to the same party. Hence the necessity, in order to impress a fund with a trust on this ground, to establish its identity with the property or fund which was originally subject to the trust. Third Nat. Bank of St. Paul v. Stillwater Gas Co., 36 Minn. 75, 30 N. W. 440.

Had it appeared in this case that the wheat checks, in paying which Alme's money was used, had been issued by, and constituted outstanding obligations of, the Thorpe Elevator, and that by the purchase of them that company becomes the debtor of Melbye, and that the draft or check on that company for $385 was received or drawn as payment of the amount due Melbye on the wheat checks by him purchased with the intervenor's money, we are by no means prepared to hold that the avails of the intervenor's money would not have been sufficiently traced and identified with the deposit so as to impress the deposit with a trust in favor of the intervenor to the extent of $385. But evidence tending to prove any such facts was entirely lacking. The facts do not bring the case within the doctrine of any of the four lines of decisions referred to in Bishop v. Mahoney, 70 Minn. 238, 73 N. W. 6, unless possibly the fourth, which has now little or no support in any well-considered cases, and would not be followed or adopted by this court.

Order reversed, and a new trial granted.