JULIA H. GLIDDEN as Administratrix With the Will Annexed of the Estate of FRED A. GLIDDEN, Deceased, *Appellant*, v. FRED A. GUTELIUS and J. WARREN SMITH, As Co-receivers and Successors to First American Bank & Trust Company, West Palm Beach, Florida, a Corporation As Receiver of the Farmers' Bank & Trust Company, West Palm Beach, Florida, a Corporation, and ERNEST AMOS, Comptroller of the State of Florida, *Appellees*.

Division B.

Opinion filed December 22, 1928.

Petition for rehearing denied February    , 1929.

*Winters, Foskett & Wilcox,* for Appellants;

*Wideman & Wideman,* for Appellees.

BUFORD, J.—In this case the appellant filed a bill against the Receivers of the Farmers Bank & Trust Company, a banking corporation in West Palm Beach, Florida, to have a preference declared in favor of the estate of which she was a joint administratrix, and at that time became surviving administratrix, because of the failure of the co-administrator, Farmers Bank & Trust Company. The bill sought to have declared a preference in favor of the Glidden es-

836

tate in the full amount of monies received by the co-admin-istrator, Farmers Bank & Trust Company, in the execution of its duties as such co-administrator of such estate and which said monies, it was alleged, were held in trust by the Farmers Bank & Trust Company at the time it became insolvent and suspended business. It is alleged that Farmers Bank & Trust Company prior to March 12, 1927, was a banking corporation under the laws of the State of Florida, was engaged in the general banking business in West Palm Beach, Florida, and was clothed with trust powers under the statutes of the State of Florida; that pursuant to law on the 24th day of May, 1926, the Farmers Bank & Trust Company was appointed co-administrator with the appellant of the estate of Fred A. Glidden and that the Trust Company accepted such appointment and entered upon the discharge of its duties incident thereto by taking possession as administrator of all the personal property of such estate, including cash, and thereafter collected other cash, the property of the estate, and retained possession thereof in its trust capacity. That on the 12th of March, 1927, Farmers Bank & Trust Company suspended business while it was still acting as such co-administrator and then had in its possession in that capacity funds belonging to the Glidden estate aggregating $16,115.05; that the money so received and accepted by the Trust Company was unlawfully mingled with the funds of Farmers Bank & Trust Company; that at the time the bank was closed it had on hand $147,717.55; that it was then chargeable with more than $200,000.00 held by the bank in its fiduciary capacity as trust funds of which said sum of $16,115.05 belonged to the Glidden estate and the remainedr belonged to other owners toward whom Farmers Bank & Trust Company occupied the position of trustee in some capacity of equal force and dignity to that which it occupied as trustee of the funds so held by it belonging to the Glidden estate.

It is further alleged that the bank at the time it closed had sufficient monies and securities of the class and character in which said bank was authorized by law to invest monies held by it in fiduciary capacities to pay and discharge in full the aggregate amount with which the said bank was chargeable by reason of the fiduciary capacities assumed by it similar in character and of the same legal classification as that of co-administrator of the Glidden estate and that all of such trust funds had been mingled with the bank's funds; that the securities of the class and character in which said bank was authorized by law to invest money held by it in fiduciary capacities appearing in the assets of the bank had been purchased by the bank with funds of the bank mingled with the funds which the bank so held in its fiduciary capacities.

It is further alleged that after the bank suspended business the appellant became and was the sole administratrix of the estate and that the appellant had demanded of the Receivers full payment of the full amount alleged to be due the Glidden estate, or the allowance thereof as a preferred claim; that both demands were refused by the Receivers and suit was brought to enforce the same.

To the bill of complaint the defendants filed a joint general demurrer. The demurrer was sustained and appeal was taken.

The questions to be determined here are:

1. Does trust money have to be identified before it may be recovered?

2. If trust funds are commingled with other funds of the trustee and disbursements made from the common fund, what legal presumption follows?

3. If trust funds are commingled by the trustee with funds of the trustee and investments are made with such commingled funds, which investments might lawfully be

made by the trustee with the trust funds, what will be the presumption as to the ownership of the securities acquired by such investment and will such securities be impressed ·with the trust to the extent of the trust fund which should have been found to have been so commingled with funds of the trustee?

And to these three questions may properly be added a fourth question, which is:

"If upon a bank clothed with trust powers becoming insolvent, it is ascertained that such bank held various funds as trustee, or in trust, and that these funds were acquired in several different ways and the duty of the banking company was not alike to all trust funds, it appearing that a parcel of the trust fund was received by the bank under such conditions that the bank was not authorized to mingle the same with its funds and was not authorized to invest funds in any securities, while it appeared that the bank in its fiduciary capacity had received other funds in trust which the bank was authorized by law to invest in securities, but had in violation of law, mingled such trust funds with its own funds, and it is further found that the cash on hand, together with securities purchased by the bank after commingling of funds, and which securities could have lawfully been purchased by the bank with such letter trust fund, will exceed the amount of the trust estates chargeable against the bank, in what manner should the trust obligations of the bank be discharged?"

Powers of a trust company organized under the laws of the State of Florida are set forth in Sec. 6126 Compiled General Laws of Fla., 1927, paragraph 13 of which reads as follows:

"To be appointed and to accept the appointment of executor of or trustee under the last will and testament, or administrator, with or without the will annexed of the estate of any deceased person, and to be appointed and to act as the committee of the estate of lunatics, idiots, persons of unsound mind and habitual drunkards."

Sec. 6127, C. G. L. of Fla. 1927, provides as follows:

"No trust company shall have power to invest funds derived under paragraphs 6, 7 and 13 of Sec. 6126, or to make loans upon bills, notes or other evidences of debt, except to a county, city, town, municipality and county or school boards of this State, unless the same shall be secured by first mortgage upon real estate not to exceed sixty per cent of the value of such real estate, or by other approved securities, the actual value of which other approved securities shall at all times exceed by at least twenty per cent of the amount loaned upon the same.

"Except under and subject to the provisions of this Article, no corporation hereafter organized shall exercise within this State, or be hereafter incorporated for the purpose of exercising therein any of the powers set forth in sub-divisions 1, 2, 5, 6, 7, 8, 9, 11, 12, 13, 16 and 17 of the preceding section. No money, property or securities received or held by any trust company in its capacity of assignee, receiver, executor, administrator, guardian or trustee shall be mingled with the investments of the capital stock or other moneys or property belonging to or deposited with such corporation, or shall be liable for the debts or obligations of such corporation; all other moneys and funds belonging to or deposited with such trust company may be used

and invested in accordance with the previous of this Article."

Sec. 6128 C. G. L. of Fla. provides as follows:

"It shall be unlawful for any officer, director or employee of any trust company doing business in this State to deposit the uninvested funds belonging to any particular trust, for which such trust company shall be trustee, in the banking department of the trust company itself, or with any other bank, trust company, corporation, partnership or individual, without first taking full and adequate security therefor. Bonds of the United States, bonds of the several States, or municipal bonds of this State may be accepted as such security, or special district bonds, drainage bonds, or first mortgages on improved real estate."

And Sec. 6129 C. G. L. of Fla. provides as follows:

"When the uninvested funds of a particular trust are deposited in the banking side of the trust company acting as trustee, such trust company shall set aside under proper resolution of the board of directors securities of the class above mentioned, and hold the same in trust as security for benefit of the uninvested funds mentioned."

Sec. 6128 and 6129, *supra,* were enacted and became a part of the statute law after the cause of action in this case arose and, therefore, are only useful here, if at all, as an indication of legislative construction that such provisions were not contained directly or by implication in theretofore existing statutes.

We apprehend that there is a distinction to be drawn between the status of trust funds which may under law be

invested in certain securities and trust funds which the trust company has no lawful authority to invest in securities, although both such trust funds may have been by the trust company commingled with its own funds. This Court in the case of Atlantic National Bank of Jacksonville v. Pratt, opinion filed April 26, 1928, and reported 116 So. R. 635, say:

"Where a bank remits to B bank several items of negotiable paper 'for collection and remittance according to the custom and understanding between' the banks, viz., that B bank should remit to A bank 'the amount of money collected each day on the day the same was collected,' and B bank collects the several items from other banks or persons and remits to A bank checks of B bank on other banks for the amounts of the collections, but such checks are not paid in due course because of the failure of B bank after making the collections and after remitting its checks therefor, but before the checks of B bank are paid, and there was no commingling of funds by consent and no reciprocal accounts or deposits between the two banks, B bank having an account with a balance to its credit with A bank but A bank having no account with B bank, A bank is entitled to a preference in payment by the receiver of B bank for the collections made. See State National Bank of Little Rock v. First National Bank of Atchison, Kan., 124 Ark. 531, 187 So. W. 673. Bank of Poplar Bluff v. Millspaugh, 313 Mo. 412, 281 So. W. 733, 47 A. L. R. 754; Federal Reserve Bank of Richmond v. Peters, 139 Va. 45, 123 So. E. 379, 42 A. L. R. 742."

In that case the Court had under consideration a fund to which B bank held no title but as to which it acted merely

as collection agent for A bank and it was held that A bank was entitled to a preference by the receiver of B bank for the collection made upon the theory that the assets of B bank had in nowise been augmented by the amount of the collection made for A bank and although the funds so collected by B bank had been mingled by it with its own funds, the owner of those funds for which the collection was made was entitled to have an equivalent amount delivered to it from the commingled funds in the hands of the receiver. It appears clear to us that in view of the above quoted statutes this is the rule which should apply in like cases where there are sufficient securities purchased with trust funds commingled with the bank's funds and cash coming into the hands of the receiver from such commingled funds to restore to the owners for whom such collections are made the amount of such collections, and to restore to beneficiaries of the trust funds so commingled cash and securities so purchased to the equivalent of such trust funds so commingled, leaving the remainder of the property of the defunct bank coming into the hands of the receiver as the assets of the defunct bank to be distributed to creditors in proper order. It is said in 26 R. C. L. 1348:

"No right is more fully recognized than the right of a *cesqui que* trust to pursue and recover trust funds wrongfully diverted, provided their identity has not been lost and they have not passed into the hands of a bona fide purchaser for a valuable consideration without notice. Whenever property in its original state and form has once been impressed with the character of a trust, no subsequent change of such state and form can divest it of its trust character, so long as it is capable of clear identification; and the beneficiary of the trust may pursue and reclaim it in whatever form he may find it, unless it has passed into the possession of a

bona fide purchaser without notice. Whether a disposition of trust funds be rightful or wrongful, the beneficial owner is entitled to the proceeds, whatever be their form, if he can identify them. If they can not be identified, because they are mingled with the moneys of the trustee, then the beneficiary is entitled to a charge upon the new investment to the extent of the trust money traceable in it. This right of the *cesqui que* trust has its basis in the right of property and the courts proceed on the principle that the title has not been affected by the change made of the trust funds, and the *cesqui que* trust has option to claim the property and its increased value as representing his original fund. The right to follow and appropriate ceases only when the means of ascertainment fail.''

And this disposes of the first question.

It is a rule too well settled to require the citation of authorities that where trust funds are commingled with other funds of the trustee and disbursements are made from the common fund, or the common fund is wasted, it will be presumed that that part disbursed or wasted was that of the trustee and not the property of the *cesqui que* trust, In Smith v. Combs et al, Court of Chancery N. J. 24 Atl. Rep. 9, the court say:

''However it is nevertheless urged that there are no ear-marks by which the moneys which came to the hands of Joseph Combs, deceased, can be traced and distinguished from any other moneys and that consequently it is impossible to say the balance now in the hands of his administrators is trust money. If this be the criterion, then it is only necessary for any person acting in a fiduciary capacity to convert all the estate which he has in charge into money, and mingle it with

his own, and become insolvent, in order to deprive his *cesquis que trustent* of their rightful claims, and give his creditors an equal benefit with the *cesquis que trustent*. I think, in case it can be shown that a trustee has converted portions of his trust estate into money, or has used trust funds for the purpose of purchasing personal property and taking the title thereto in his own name, and again converting that into money, or where it has been converted into money by his administrator, and there is no uncertainty in either event as to the amount, whatever funds or estate may be left in his hands or in the hands of his administrators should be regarded as representing the trust until it is fully satisfied, and this even against creditors, unless it be made manifest that injustice will be done them. Lewin, in his work on Trusts and Trustees, (Vol. 2, p. 894) says:

"It may be said that the trust money has, like water, run into general mass, and become amalgamated, and therefore the *cesqui que trust* has no lien. But clearly this cannot be maintained, for suppose a trustee, partly with his own money and partly out of the trust fund, to have purchased an estate. It can not be predicted of any particular part of the estate that it was purchased with the *cesqui que trust's* money, and yet the *cesqui que trust* has a lien upon the whole of the amount that was misemployed. And it follows, in the other case, that, though the identical pieces of coin cannot be ascertained, yet, as there is so much belonging to the trust in the general heap, the *cesqui que* trust is entitled to take so much out.' The same author again says that trust funds will be followed through all the ramifications of the trade or business, or if deposited in bank with private funds, will be seperated from the latter and given to the beneficiary. Id.; 2 Perry, Trusts Sec. 1076; National Bank v. Insurance Co., 104 U. S. 54;

Bank v. Pollock, 4 Edw. Ch. 215; Third Natl. Bank of St. Paul v. Stillwater Gas Co. (Minn.) 30 N. W. Rep. 440; Wilkins v. Stevens, 1 Younge & C. Ch. 431; Pennell v. Deffell, 4 De Gex, M. & G. 372.''

The same rule applies to administrators and executors which applies to other officers, that is, the presumption is that those administering the fund had properly discharged their duty and the presumption is against any misconduct on their part, until the contrary is shown. The general duties of an executor are: to collect the effects of the decedent, to pay the claims against his estate and to distribute the residue to those entitled thereto.

In Leach, State Supt. of Banking, v. Farmers Savings Bank of Hamburg, 213 N. W. 414, the Supreme Court of Iowa say:

"It seems to be settled law that an executor or administrator is not only the personal representative of the decedent, but is also, to a ver y great extent, the representative of the creditors and of the legatees and distributees. He occupies a position of trust with respect to those who are interested in the estate and is a trustee in the broadest sense, though not in the general acceptation of the term. 23 C. J. p. 1170, 387B; American Law of Administration by Woerner (2nd Ed.) Vol. 1, star page 789; Langan Co. v. Dixon, 46 S. D. 170, 191 N. W. 444; Pierce v. Holzer, 65 Mich. 263, 32 N. W. 431; Bettendorf v. Bettendorf 190 Iowa 83, 179 N. W. 444, 945; Lampman v. Lampman, 118 Iowa 140, 91 N. W. 1042; Herriott, v. Potter, 115 Iowa 648, 89 N. W. 91. That this thought was in the contemplation of the Legislature at the time of the passage of the legislation hereinafter to be referred to, is shown by a

reading of Chap. 152, Acts of the Thirty-fifth General Assembly, wherein these estates are at several places referred to as "trusts." We are therefore safe in starting the discussion of the matters herein involved by saying that the assets of this Burkhiser estate, that came into the possession of this bank as such administrator, was a trust fund. It follows, that when such funds belonging to said estate went into the possession of said bank it necessarily increased the assets of said bank. Having thus traced the assets of this trust estate into the hands of the bank, and its having increased the assets of the bank at the time the fund went into the bank, the next question is whether or not the assets thus augmented passed into the hands of the receiver. As heretofore stated, since the opening of the Burkhiser estate and the bank's taking charge thereof as administrator, there has been no time in the history of the bank, according to the record, when the actual cash assets of the bank were less than the amount shown to be in the hands of the administrator at the time the receiver took charge.

"In Stilson v. First State Bank, 152 Iowa 724, 133 N. W. 354; Whitcomb v. Carpenter, 134 Iowa 227, 111 N. W. 825, 10 L. R. A. (N. S.) 928; Cable v. Iowa Savings Bank, 197 Iowa 393, 194 N. W. 957, 197 N. W. 434, 31 A. L. R. 748, this court laid down the rule that, where there is a common fund in which there is a trust fund and the bank continues to draw from said fund, it is presumed that they will draw their own fund and preserve the trust fund. This is also stated, in substance, in Independent Dist. of Boyer v. King, 80 Iowa 497, 45 N. W. 907, and seems to be the general rule elsewhere. The fact, therefore, that this money from this estate was mingled with the general fund of the bank,

will not defeat the recovery of the trust fund so long as there was money enough in the bank to pay the trust fund, and it is the right of the *cesqui que trust* to recover the said fund from the receiver of the insolvent bank when he has shown these facts.''

See also Sherwood v. Central Michigan Savings Bank, 61 N. W. 352.

The cases with which we have been dealing were those in which cash on hand was sufficient to meet the demands of the *cesquis que trustent*.

In the case at bar, the cash on hand is not suffiicient to pay the trust obligations. The bill alleges that there was an unlawful commingling of the trust funds with the general funds of the bank and that subsequent to this commingling of funds, securities were purchased with the commingled funds, such as are authorized by statute to be the subject of investment of trust funds, and that these securities so purchased together with the cash on hand, exceed the aggregate amount of the trust funds held by the bank.

If this be true, then the Trust Company merely changed the form of a portion of the funds in which money of the trust company and of the *cesqui que trustent* had been mingled and this fund, in its changed form, will be impressed with the trusts just the same as if the form had not been changed when it is found that the fund in its changed form remained in and augmented the assets of the trust company and it may be claimed by the *cesqui que trustent*. City of Lincoln v. Morrison, Nebraska, 90 N. W. 905; State v. Bank of Commerce, 54 Neb. 725, 75 N. W. 28; Elliott v. Kuhl, 60 N. J. Equity 333; 46 Atl. 945; Berchal v. Walther (Mo.) 63 S. W. 691; Bryan v. McGrath, 130 Cal. 316, 62 Pac. 559; Mercantile Co. v. Melbye, 78 Minn. 357, 81 N. W. 20.

There is a difference between the dissipation of a trust

fund and the investment of a trust fund in securities in which the trust company may lawfully invest such a fund.

The bill of complaint in this case alleges that the trust fund has been dissipated, but that the trust fund was commingled with funds belonging to the trust company and such commingled fund was invested in securities as above stated. Therefore, it follows that the *cesqui que* trust is not limited to the satisfaction of his claim from the lowest amount of cash on hand at any time after the trust is created but he may follow the trust fund into the securities so purchased with the commingled fund and have those securities decreed to be impressed with the trust. Those securities distinctly augment the assets as a whole. In First Bank of Corwith, Haswell, claimant, Iowa, 133 N. W. 354, the Court say:

"That one's money was received by a bank as a trust fund does not entitle him to a preference against its receiver and other creditors; but it must further appear, by presumption or otherwise, that the trust fund has not been disssipated, but has come into the hands of the receiver, either as a distinct and traceable account or fund, or as an augmentation of the estate as a whole."

It is true that failure of the bank discloses that funds have been dissipated, but the universal rule is that where it is shown that funds have been dissipated it will be presumed that the funds so dissipated were the funds of the dissipators and that the funds remaining in his hands are the funds of his *cesqui que* trust. Waddell v. Waddell et al, Utah, 104 Pac. 743; Woodhouse v. Crandal, 197 Ill. 104, 64 N. E. 292; Board of Commissioners of Crawford County v. Strong, 157 Fed. 49.

And so we arrive at the conclusion that where funds held

in trust by a trust company are commingled with the funds of the trust company and investments are made with such commingled funds, which investments might lawfully be made by the trust company with the trust funds, the presumption to be indulged is that such investments were made with the trust funds and that the securities so purchased come to the trust company and remain in the trust company impressed with the trust to the extent of the amount of the trust fund which may have been found to have been so commingled with the funds of the trustee. This rule may work some hardship on general depositors in a bank which is clothed with trust powers, but it must be borne in mind that depositors have every opportunity to know whether or not a banking institution with which they are doing business is clothed with trust powers and is exercising trust functions. Depositors also know, or should know, that under the statute trust funds in the hands of a banking institution can not be looked to to meet the institution's obligations. General depositors also know, or should know, that by the commingling of trust funds with the general funds of the banking institution all the funds so commingled become impressed with the trust and the entire commingled fund is available to discharge the trust. It is to be further borne in mind that general depositors in making a deposit in a banking institution part with the title to the deposit and become common creditors of the bank to that amount, while the *cesqui que* trust does not part with his title nor becomes a creditor of the bank. The bank in the latter case receives the property of the *cestui que* trust in a fiduciary capacity only and is bound to hold it sacred and to keep it separate from the general funds of the institution.

It has been contended in the case now before us that only the cash on hand at the time the bank closed, which was the lowest amount of cash on hand in the bank at any time

after the creation of the trust, is the limit of the cash which may be applied to the discharge of trust obligations. Whether or not this is correct depends upon whether or not deposits of cash in other banks were made up of commingled funds as above referred to, or constituted funds which had never been commingled with the trust fund. Such deposits may have come from sources which had not been in anywise commingled with the trust fund and these facts can be ascertained by the introduction of proper evidence.

The order of the chancellor sustaining the demurrer should be reversed and it is so ordered.

Reversed.

WHITFIELD, P. J. AND TERRELL, J., concur.

ELLIS, C. J., AND STRUM, J. J., concur in the opinion and judgment.

BROWN, J., dissents.

WHITFIELD, P. J.—As stated by Mr. Justice BUFORD in main opinion there is a distinction to be drawn between the status of trust funds which a trust company may under the statute invest in certain securities and trust funds which the trust company had no lawful authority to invest in securities; and as also stated, where trust funds are commingled with other funds of the trustee, and disbursements are made from the common fund, or the common fund is wasted, it will be presumed that the part disbursed or wasted was that of the trustee and not the property of the *cestui qui* trust; and the presumption is now that those administering a trust fund have properly discharged their duty; and the general duties of an administrator is to collect the effects of the deceased, to pay the claims against

his estate and to distribute the residue to those entitled thereto.

The statute authorizes Trust Companies to qualify and act as administrator or other fiduciary or trustee, requires such companies to keep trust funds separate from their general funds, provides that trust funds shall not be liable for the debts or obligations of the trust companies, and designates the classes of securities in which trust funds may be invested *where investment of such trust funds is duly authorized.* See Secs. 4185, 4186, Rev. Gen. Stats. 1920; Secs. 6126, 6127, Compiled General Laws 1927.

It is only when a fiduciary trust company fails or is financially unable to meet all of its trust and general obligations, that questions of commingling funds, priorities in in payments and presumptions as to the use or dissipation of the general or trust funds of a fiduciary trust company arise for judicial or administrative decision.

Where a trust company that is authorized to act as trustee or other fiduciary, commingles its trust funds with its general funds, and after making disbursements from the commingled funds fails, and its assets pass into the hands of a receiver, if the trust funds should have been held in cash, the presumption is that amounts which have been invested or otherwise used or dissipated were the trustee's general funds, since the presumption is against an illegal use of the trust funds; and where the trustee fails and has insufficient assets to meet the fiduciary and general obligations of such trustee, the preferences of the *cestui que trustent* are, as occasion requires, confirmed to the lowest cash balance on hand at any time after the trust funds were received, unless the trust funds are traced into securities or other estates of the trustee. But when the trust funds may lawfully be invested in particular classes of securities and the assets of the trust company include se-

curities in which the trust funds could lawfully have been invested by the trust company, and the cash on hand is insufficient to cover the trust amounts that should be paid from cash in hand, the presumption is that the trust funds were lawfully invested, if such securities were acquired after the commingling of the fund; and the preference of the *cestui qui trustent* may extend to the securities on hand so acquired, in which the trust funds could lawfully have been invested, in the absence of some showing that the trust funds were not so invested.

Ordinarily an administrator merely as such is not authorized to invest funds of the decedent's estate, the general duties of an administrator being to collect the decedent's personal assets, pay his debts and distribute the balance.

If it is the duty of a trust company to hold particular trust funds in cash, as when the trust company is an administrator without authority to invest monies of the decedent's estate and upon failure of the trust company, the cash on hand is not sufficient to pay all depositors, the beneficiaries of the funds held by the trust company as administrator may have a right to priorities in the cash on hand at the time the trust company failed, predicated upon a legal presumption that the trust company having no right to invest or to dissipate funds held by it as administrator, did not invest or dissipate its trust funds.

Where the trust company had authority to invest fiduciary funds held by it, and when the trust company failed, it had securities of the classes in which the trust funds could properly have been invested, the *cestui qui trustent* may have priorities in such securities, predicted upon a legal presumption that the trust company exercised its authority to invest and did invest the trust funds in the securities on hand that were proper for such investment, and that the trust funds were conserved, and that dissipa-

tations or losses if any were from general funds of the trust company rather than from the trust funds, in the absence of evidence controlling the case.

Where the cash on hand is not sufficient to pay all the trust amounts that should have been held in cash by the trust company, it may be appropriate to apportion the payments among those entitled to preference in payments from the cash on hand.

Likewise where the trust company had securities or other property in which particular trust funds could properly have been invested by the trust company and such securities or property are insufficient to cover all the trust funds that could properly have been invested therein, it may be appropriate to apportion the payments from the securities on hand among those duly claiming amounts that were held by the trust company and that could lawfully have been invested in the particular securities.

Where an administrator as such is not authorized to invest the funds of the decedent's estate, collections or deposits by the administrator as such are to be held in cash or subject to check; and if the administrator is a trust company and it fails after commingling its general funds with the funds it received as administrator, the beneficiaries of the decedent's estate may have a preference over general depositors as to the cash on hand, and also as to securities (if any which may remain after the claims of *cestuis qui trustent* having priority as to securities lawfully acquired with funds as herein before stated shall have been satisfied and which securities shall have been shown to have been acquired by the administrator after the commingling of that trust with the general funds, predicated on the legal presumption that where there has been a waste or dissipation or loss and also an unauthorized investment of commingled funds in valuable securities, the trust funds were conserved by the fiduciary company and the waste, dissi-

pation or loss was from the general funds rather than from the trust funds in the absence of evidence controlling the case.

When a trust company lawfully acts as a fiduciary with power to invest funds in particular securities, and the trust company as such fiduciary commingles the trust funds with its general funds and then invests such commingled funds in securities that are lawful investments for the trust funds, upon a general failure of the fiduciary trust company the *cestuis qui trustent* may have a preference in the securities found among the fiduciary company's assets that are authorized investments of the fiduciary trust fund, in the absence of a showing that the trust fund was not invested in such securities.

It does not appear in this case by allegation or exhibit whether the administrators with the will annexed had authority to invest the funds of the decedent's estate, the will not being in the record. The principles above stated sufficiently indicate the rules that should be observed in further proceedings herein.

As under the allegations of the bill of complaint appropriate evidence may be adduced to establish an equity for at least some substantial relief within the scope of the relief sought, the general demurrer to the bill of complaint should have been overruled, and the decree of reversal should stand.

Rehearing denied.

TERRELL, C. J., AND ELLIS, STRUM, BROWN AND BUFORD, J. J., concur.