FIRST STATE TRUST AND SAVINGS BANK OF SPRINGFIELD, as Executor and Trustee of the Estate of D. M. Ottis, deceased, *Appellant,* vs. J. H. THERRELL, as Successor to the Guardian Trust Company, as Liquidator of the Biscayne Trust Company; JENNIE ULLENDORFF; J. B. MOOS; THE CITY TRUST COMPANY, a Florida Corporation as

Administrator C. T. A. D. B. N. of the Estate of Alma Larsen, deceased; and MABLE SALISBURY, *Appellees.*

138 So. 733.

Division B.

Opinion filed January 8, 1932.

*Wilder & Jacobsen,* for Appellant;

*Mitchell D. Price* and *Charles W. Zaring, S. J. Barco, Price, Price & Hancock,* and *Hudson & Cason,* for Appellees.

*Kurtz & Reed,* as Amici Curiae.

TERRELL, J.—This appeal is from a final decree in five cases which were consolidated by order of the Chancellor on consent of counsel. The cases consolidated were styled as follows:

1. FIRST TRUST & SAVINGS BANK OF
SPRINGFIELD, Complainant,
 Number 31423-B

vs.

THE GUARDIAN TRUST COMPANY,
a Florida Corporation, as Liquidator of
Biscayne Trust Company, a Florida Corporation, Defendant.

2. J. B. MOOS, Complainant,
 Number 31427-B
 vs.
THE GUARDIAN TRUST COMPANY,
etc., Defendant.

3. MABLE SALISBURY, Complainant,
 Number 31535-B
 vs.
THE GUARDIAN TRUST COMPANY,
etc., Defendant.

4. JENNIE ULLENDORFF (sometimes
known as JENNIE ULLENDORFF
GOSSETT), a feme sole, Complainant,
 Number 31459-B
 vs.
THE GUARDIAN TRUST COMPANY,
etc., Defendant.

5. THE CITY TRUST COMPANY, a
Florida Corporation, as Administrator
Cum Testamento Annexo De Bonis Non,
of the Estate of Alma Larsen, deceased,
and for the use and benefit of all Estates
similarly situated and of like nature,
 Complainant,
 Number 31467-B
 vs.
THE GUARDIAN TRUST COMPANY,
etc., Defendant.

It appears that all these cases grew out of the failure
of the Biscayne Trust Company which closed its doors
June 11, 1930, that the Guardian Trust Company was ap-
pointed Liquidator for the Biscayne Trust Company, and
that J. H. Therrell, the appellee, was later appointed suc-
cessor to the Guardian Trust Company.

In case Number 31423-B, complainant, First Trust and
Savings Bank of Springfield, executor and trustee for the
estate of D. M. Ottis, seeks to impress a preferred claim
on all the assets of Biscayne Trust Company in the hands

of the appellee, as trustee, because of the fact, that on August 28, 1929, Two Thousand Dollars ($2,000) was deposited with Biscayne Trust Company by said D. M. Ottis to be held by it in escrow until the title to a certain parcel of land was made good and marketable. The title to said land was not made good prior to the closing of Biscayne Trust Company though it still held said deposit for that specific purpose, so First Trust and Savings Bank of Springfield as trustee for the estate of D. M. Ottis is attempting to enforce payment of said moneys in full from funds in the hands of J. H. Therrell as Liquidator.

In case Number 31427-B, complainant, J. B. Moos, seeks to impress a preferred claim on all the assets of Biscayne Trust Company in the hands of appellee as trustee because of the fact that on or about June 15, 1926, Robert Y. Brand and Edith M. Brand his wife, executed and delivered to Biscayne Trust Company, as trustee, a deed of trust or mortgage to secure a certain gold note in the sum of Seventeen Thousand Dollars ($17,000), that J. B. Moos, became, and at the time Biscayne Trust Company closed its doors, was the owner of said gold note, on which at said time, Biscayne Trust Company had collected and held the sum of Two Thousand Seven Hundred Seventy-five and six one-hundredths Dollars ($2,775.06), that said sum so held should have been paid over by Biscayne Trust Company to J. B. Moos prior to the closing of its doors but having failed in this J. B. Moos is attempting to enforce payment of said sum in full from funds in the hands of J. H. Therrell as liquidator.

In case Number 31459-B, Jennie Ullendorff seeks to impress a preferred claim on all the assets of Biscayne Trust Company in the hands of appellee, as trustee, because of a trust agreement executed January 28, 1928, in which she conveyed to Biscayne Trust Company, as trustee personal property aggregating Fifty Thousand One Hundred Dollars ($50,100) in value, together with other rights

which were not realized prior to the date the Biscayne Trust Company closed its doors. Under this trust agreement Biscayne Trust Company was authorized to receive, hold, manage, control, collect, sue for, sell, transfer, and deliver the securities or cash comprising said fund and to invest and reinvest the same. The said trust agreement was designated as "The Jennie Ullendorff Trust" and at the time the Biscayne Trust Company closed its doors it held the sum of Five Thousand Seven Hundred fifty-three and seventy-three one-hundredths Dollars ($5,753.73) belonging to said trust account which it had wrongfully mingled with its own funds and so Jennie Ullendorff is attempting to enforce payment of said claim in full from funds in the hands of J. H. Therrell as liquidator.

In case Number 31467-B, City Trust Company as administrator Cum Testamento Annexo De Bonis Non (that which is granted when an executor dies leaving part of the estate unadministered) of the estate of Alma Larsen, deceased, seeks to impress a preferred claim on all the assets of Biscayne Trust Company in the hands of appellee, as trustee, because it, Biscayne Trust Company, was appointed executor of her estate under her (Alma Larsen's) last will and testament, that it qualified as such executor, and prior to the date Biscayne Trust Company closed its doors it collected cash and personal property belonging to said estate in the sum of Twenty-three Thousand Six Hundred Eighty-five and seventy-nine one-hundredths Dollars ($23,685.79), which it held at the time it closed its doors, that after the failure of Biscayne Trust Company the City Trust Company was appointed administrator Cum Testamento Annexo De Bonis Non of said estate of Alma Larsen and having been thus named and designated the City Trust Company, as administrator is entitled to an accounting against Biscayne Trust Company and is attempting to enforce payment of said claim

in full from funds in the hands of J. H. Therrell as liquidator.

In case Number 31535-B, complainant, Mable Salisbury, seeks an accounting to determine the rights of the several creditors and the several classes of creditors that may have claims against Biscayne Trust Company and to enjoin it from allowing and paying out of its assets, other than assets pledged to secure trust deposits any preferential claims in prejudice of the rights of complainant and others in like situation. At the time Biscayne Trust Company closed its doors, Mable Salisbury was one of its general depositors and had on deposit with it the sum of One Thousand Four Hundred Seventy-six and seven one-hundredths Dollars ($1,476.07). The fact of the deposit gave the Biscayne Trust Company power to invest the funds, created the relation of debtor and creditor, made the complainant a general depositor and made the funds deposited subject to withdrawal at any time under the rules of the bank or trust company. In this case the relation of complainant and defendant was clearly that of debtor and creditor while in the other four cases the relation of complainant and defendant was that of trustee and cestui que trust.

The answer of the defendant in the cases consolidated shows that there is no material difference between the parties to any of them as to the facts, that at the time Biscayne Trust Company closed its doors it had received trust funds and was indebted to cestui que trustants for them, a sum aggregating more than $800,000; and that of these funds it had power to invest and reinvest over $100,000 while as to more than $700,000 it was required to hold in trust for specific purposes and had no power to invest.

The answer and the testimony further show that the total cash assets of Biscayne Trust Company, at the time it closed its doors amounted to less than $200,000, while

the value of its real estate, stocks, bonds, and mortgages would approximate $198,504.29, that the assets in the hands of the liquidator are therefore wholly inadequate to pay the preferred claims, that general depositors could expect nothing and that preferred creditors or claimants could expect but a small proportion of the amount due them unless some of them were in position to be given preference over others. The answer admits that all five complainants except Mable Salisbury are preferred creditors, that the account of Mable Salisbury was a savings account on which she sought to establish a preferred claim, that the other four claimants established their right of preference on the basis of trust accounts, that there was a total of over twelve hundred trust and savings accounts held by the Biscayne Trust Company when it closed, and that the right of preference was admitted as to all the trust accounts but that it was denied as to all the savings accounts.

The Chancellor found and decreed that in each case where the Biscayne Trust Company was acting as executor, administrator, guardian, collecting agent, escrow holder or trustee under a live trust agreement, all moneys coming into its hands came in its capacity as trustee, that the assets in the hands of said trustee were increased by reason of the creation of these trusts and that each and all of said parties were entitled to a preference in the payment of their claims over general depositors. The final decree classified these trust claimants as follows:

" 'Class A. Claims against the Liquidator and against the assets of the Biscayne Trust Company where the Biscayne Trust Company had no power to invest under the agreement or arrangements wherein and whereby it acquired possession of the funds upon which said claims are based.

" 'Class B. Claims against the Biscayne Trust Company arising out of contractual relations wherein and whereby the Biscayne Trust Company not only acquired the possession of certain funds in trust but also

acquired a right to invest the funds so acquired in securities to be selected by it.'" .

The Chancellor also decreed the claims on which cases Number 31423-B, 31427-B, and 31467-B were predicated, to be in Class A, and should be paid on a pro rata basis with all other claims in Class A from the cash assets in the possession of the Biscayne Trust Company at the time it closed its doors, the surplus, if any, to be available for distribution among Class B creditors. He further decreed the claim on which case Number 31459-B was predicated to be in Class B, and should be paid on a pro rata basis with all other claims in Class B from the proceeds of the sale of stocks, bonds, mortgages, notes, securities, and all other collateral in which any of the funds of the Biscayne Trust Company had been previously invested, the surplus, if any, to be available, in case the cash assets were insufficient, for distribution among Class A creditors; and that as to the claim on which case Number 31535-B was predicated the Chancellor decreed that the relation of debtor and creditor existed between complainant and defendant at the time the defendant closed its doors, that complainant may share on a pro rata basis with all other common creditors of Biscayne Trust Company in any assets available for distribution among common creditors but no common creditor or savings account creditor shall be paid anything until Classes "A" and "B" have been paid in full. This appeal is from that final decree.

The main question brought here for our solution may be stated as follows: When the total assets of an insolvent trust company in the hands of the State Banking Department are admittedly shown to be inadequate to pay the preferred claims against it may the preferred claimants be classified on some reasonable basis and each claimant of a class be required to share pro rata in designated as-

sets of the trust company, or may there be preferences as to payment among them?

Inspection of the record discloses that this is a controversy among preferred claimants attempting to establish degrees in preference among them rather than a contest by certain creditors to establish a preference over other general creditors. That part of the decree of the Chancellor classifying the preferred claimants into Classes "A" and "B" if sound and reasonable must rest on the presumption that the trustee, Biscayne Trust Company, kept segregated and held in specie or liquid assets all trust funds turned over to it which it had no power to invest and reinvest and that it invested those funds placed in its hands which it was authorized to invest as the law directs. If this presumption was supported by the facts the classification might be upheld but being completely rebutted by the facts as disclosed by the record and resulting in such an inequitable distribution among the preferred claimants we do not think it should be allowed to stand.

It is admitted that the Class "A" creditors represent the highest and most sacred trusts committed to a trustee, yet under the decree of the Chancellor they participate first in the cash assets of Biscayne Trust Company which it is shown will not pay ten per cent of their claims, while the Class "B" creditors whose claims may or may not reach the degree of sacredness accorded to Class "A", are authorized to proceed against the securities in the hands of the liquidator which the record discloses are more than sufficient to pay their claims in full. True, Class "A" creditors participate in the residue from the proceeds of the sale of the securities after Class "B" is paid in full but the net result of the distribution is that Class "B" creditors are paid in full while Class "A" creditors are forced to bear all the losses and suffer all

the consequences of the mistakes and misdeeds of the trustee.

Prior to the enactment of Chapter 13576 Acts of 1929, the law of this State did not require trust companies to keep the trust funds for which they were acting as trustee segregated and separate book accounts kept as to each. In addition to the requirement of Chapter 13576 the law now requires that trust companies take full and adequate security for the deposit of any funds belonging to a particular trust and specifies the securities that trust funds may be invested in. Chapter 15062 and 15064, Acts of 1931, Laws of Florida.

The trusts for which Biscayne Trust Company was acting as trustee but was not authorized to invest their funds include court trusts, such as guardianships, administratorships, executorships, corporate trusts, escrows, and other miscellaneous trusts. Those trusts for which it was acting as trustee but was authorized to invest and reinvest their funds include executorships and other miscellaneous trusts. In other words, trusts of equal and like dignity are found in both classes, the funds of each class were mixed and commingled with the funds and assets of the other class, the commingled fund was cross-commingled and invested in securities, the value of which, in many instances have partially or totally vanished and it is now utterly impossible to ascertain how or to what extent the various funds in either or both classes have been invested and have depreciated.

The record in this case shows that Biscayne Trust Company listed among its assets a large number of investments not belonging to any particular trust. It is also shown that certain trust deposits were secured by investments from the commingled fund which was created or enlarged by additions from particular trusts of both classes, that trust funds of both classes were deposited in the banking department of the trust company and in the

Guaranty Trust Company of New York without taking security therefor, and that both the cash on hand and the securities held by the trustee represent the commingled fund of both classes of securities but no one can tell to what extent either contributed to them. In this situation, it cannot be said that the cash on hand and the trust investments are applicable to any particular trust or class of trusts. From this it follows that the trustee violated its duty both as to those trusts which it had a right to invest and as to those which it did not have a right to invest, and unless there be instances in which particular trust claimants can trace their moneys into the cash assets of the trustee or into investments or securities held by it, we see no ground on which the classification and distribution of the Chancellor can stand. If there be claimants who can trace their funds in part in the cash or securities held by the trust company they may be preferred as to this amount and participate pro rata as herein decreed as to the balance.

At the time it closed its doors, the Biscayne Trust Company owed trust claims aggregating more than $800,000, while on account of depreciation and failure to take security for its trust funds, the value of its assets to secure and pay these claims approximated twenty-five per cent of this amount. It further appears that all funds coming into the hands of Biscayne Trust Company whether as trust funds or general deposits were mingled in a common account and that when it purchased securities either generally or for a particular estate, it would pay for them by drawing upon the general account, using funds deposited in the general account, the savings account, and the trust account for that purpose. In this state of affairs there is no equitable basis to support the classification of trust claimants and distribution of assets among them as made by the Chancellor. The cash assets or their equivalent that should be in esse to pay class "A" have

been almost entirely dissipated, some of it having been used to purchase the very securities with which it is decreed that Class "B" claimants shall be paid. It is settled that all contributions to the commingled fund may be used to pay preferred claimants but there is no way to ascertain what part of the commingled fund is represented by additions from the cash assets, or what part of the securities were paid for with Class "A" or Class "B" funds. It is certain that the commingled fund represents an inextricable compound that no alchemist would dare the attempt to unscramble. Under such circumstances, all preferred claimants should bear the losses and participate in the distribution of the total assets on a pro rata basis. Florida Bank and Trust Company of West Palm Beach vs. Nichols, 102 Fla. 203, 135 So. 906.

Counsel for Mable Salisbury, appellee in case Number 31535-B, contends that no preferential claim should be impressed on any funds held by Biscayne Trust Company in favor of any of the parties to this cause or in favor of other parties because Section 4186 Revised General Statutes of 1920, (Sections 6127 and 6128 Compiled General Laws of 1927) were not complied with.

Section 4186 Revised General Statutes of 1920 (Section 6127 Compiled General Laws of 1927) provides that no money, property, or securities received or held by any trust company in its capacity of assignee, receiver, executor, administrator, guardian, or trustee shall be mingled with the investments of the capital stock or other moneys or property belonging to or deposited with such corporation, or shall be liable for the debts or obligations of such corporation. Section 6128 Compiled General Laws of 1927 (Chapter 12422 Acts of 1927) makes it unlawful for any officer, director, or employee of any trust company to deposit the uninvested funds belonging to a particular trust, for which it shall be trustee, in the banking department of the trust company itself, or with any other bank,

trust company, corporation, partnership, or individual without first taking full and adequate security therefor.

Both these statutes impose duties on trust companies as to the performance of which, depositors may know nothing, there being no reciprocal duty imposed on the depositors by them. Depositors have a right to assume that trust companies operating in this state will faithfully comply with the terms of the law, though in this case, they were totally disregarded by the trustee. Failure on the part of the Bicayne Trust Company to comply with the law on its part should not penalize a preferred claimant as contended for when his funds have augmented the general assets of the trust company.

Counsel for Alma Larsen, appellee in case Number 31467-B contends that her claim should be given preference and paid in full over other trust claims because it is a probate trust protected by subdivisions 6, 7 and 13 of Section 4185 Revised General Statutes of 1920 (Section 6126 Compiled General Laws of 1927), that it has been definitely traced into the general assets of the insolvent trust company, and that the lowest cash balance of the Biscayne Trust Company in the Bank of Bay Biscayne or in the Guaranty Trust Company of New York was larger at all times than the Alma Larsen claim.

Subdivisions 6, 7, and 13 of Section 4185 Revised General Statutes of 1920 (Section 6126 Compiled General Laws of 1927) as amended by Chapter 13576 Acts of 1929 have reference to the powers of trust companies and authorize them to be named and to act as trustees for the persons or trusts designated therein, among which is such trusts as represent the claim of Alma Larsen. Section 4186 Revised General Statutes of 1920 (Section 6186 Compiled General Laws of 1927) as amended by Chapter 15064 Acts of 1931 safeguards the funds coming into the hands of trust companies under subdivisions 6, 7, and 13 of Section 4185 Revised General Statutes of 1920 by designating

and restricting the securities that said funds may be invested in, but we do not understand the protection to these funds under the statutes extends further than this or that it has the effect of preferring them over other trust funds. A kindred provision for the protection of these and all other trust funds is carried in Chapter 15062 Acts of 1931. If the record disclosed any attempt to comply with the law in the matter of safeguarding the funds of Alma Larsen there might be comfort in the contention made in her behalf, but no such effort having been made and it appearing that these funds were commingled with others and invested with other securities, the value of which has partially or totally vanished, we see no theory on which they could be given a preference over other preferred claims.

The law is well settled that a cestui que trustant may pursue and recover trust funds wrongfully diverted, provided their identity has not been lost and they have not passed into the hands of bona fide purchaser for value without notice. When property in its original state and form has once been impressed with the character of a trust, no subsequent change of such state and form can divest it of its trust character, so long as it is capable of clear identification, and the beneficiary of the trust may pursue and reclaim it in whatever form he may find it. Glidden vs. Gutelius, 96 Fla. 834, 119 So. 140; Myers vs. Matusek, 98 Fla. 1126, 125 So. 360.

We do not think the facts affecting the funds in the hands of the Biscayne Trust Company belonging to the estate of Alma Larsen meet this test. It is true, as contended that these funds were traced into the hands of the Biscayne Trust Company, as were like funds of dozens of other trusts, but there they were commingled with every other fund in the hands of the trust company and the commingled fund was invested in various and sundry securities. The identical funds of the estate of Alma Larsen

nor any part of them were traced into any of these securities, neither were they traced into the hands of the liquidator of the Biscayne Trust Company, nor was the actual cash of the Biscayne Trust Company in the hands of the liquidator shown to have been enlarged by the collection of this account in any specific manner not shown by other accounts.

In view of this disposition it becomes unnecessary to discuss the question of whether or not the rule of the lowest cash balance as approved in Glidden vs. Gutelius supra, and Tinsley vs. Amos, 102 Fla. 1, 135 So. 397, is in anywise determinative of the preference claimed on behalf of Alma Larsen; suffice it to say that the test prescribed by this court in the cases last named is not met in this case. It is not shown that the funds belonging to the estate of Alma Larsen reached the liquidator's hands in any form; the cash balance held by Biscayne Trust Co., during the period in question ranged from approximately two thousand dollars to one-half million dollars, the securities set aside by the Biscayne Trust Company to secure trust funds were set aside in bulk to secure all trust funds without reference to full and adequate security to secure specific trusts as the law requires and the practice of merging, commingling, and disbursing funds from every source obtainable was such that at the time the Biscayne Trust Company closed its doors, it was impossible to tell what specific trust funds made up the cash on hand and other securities held by it, a portion of which was deposited with the Guaranty Trust Company of New York. Under such circumstances we see no basis on which the funds of Alma Larsen may be separated and withdrawn from the common fund under the doctrine as announced by this court in Glidden vs. Gutelius, supra.

The general rule as to who are preferred claimants was recited and approved by this court in Tinsley vs. Amos, 102 Fla. 1, 135 So. 397, and is as follows:

"The general test applied to determine whether or not a claimant is entitled to preferential payment from the assets of an insolvent bank in the hands of a receiver is that it must appear that the funds in question were in the bank's possession as agent, bailee, or trustee; that such funds reached the receiver's hands in some form; and that the assets brought under the receiver's control were larger by that amount than they would otherwise have been. In determining the status existing between appellant and the bank itself, the controlling element is the mutual intention and purpose of the parties with respect to the fund."

With the exception of the complainant, Mable Salisbury, in case Number 31535-B, all five complainants involved in this litigation have brought themselves within this rule. It is not necessary to prove that the identical moneys placed with the trustee passed into the hands of the liquidator. It is sufficient if the assets coming into his hands are larger because of the creation of such a trust. Bryan vs. Coconut Grove Bank and Trust Company, 101 Fla. 947, 132 So. 481.

This court has also approved the rule that when a trustee commingles trust funds with his own and dissipates a portion of the commingled fund, he will be presumed to have dissipated his own funds first and that any fund remaining in his hand is subject to distribution among his cestui que trustants. Myers vs. Matusek, 98 Fla. 1126, 125 So. 360; Glidden vs. Gutelius, 96 Fla. 834, 119 So. 145.

In this litigation, five suits were brought by as many different complainants against the liquidator of the Biscayne Trust Company, each seeking to establish a preference over the other as against the cash and securities turned over to the liquidator. The five suits were consolidated and by his final decree in the consolidated suit, the Chancellor not only adjudicated the rights and status of the five complainants but undertook to adjudicate the

rights and status of hundreds of other claimants not parties to the cause.

Final disposition of the consolidated suit will doubtless be determinative of the rights and status of many of the trust claimants whether parties to the cause or not, but if there should be trust claimants involved in but not parties to this suit whose claims are predicated on a different state of facts or the basis of which is different from those in the instant case such claims would not be concluded by the disposition of this cause.

For the reasons herein announced, the final decree below is reversed and cause remanded.

Reversed.

WHITFIELD, P.J., AND DAVIS, J., concur.

BUFORD, C.J., AND , BROWN, J.J., concur in the opinion and judgment.